PEOPLE *v.* TENEROWICZ.

1. Conspiracy—Public Officials—Criminal Law—Common Law.
   A conspiracy with or among public officials not to perform official duty relative to enforcement of criminal laws is an obstruction of justice and an indictable offense at common law.

2. Same—Indictment—Sufficiency of Designation of Crime Charged.
   Indictment for conspiracy, based on agreement or understanding that violations of criminal law will not be prosecuted, is sufficient where it designates crime by common-law generic name or words of statute if a statutory crime.

3. Indictment and Information—Conspiracy—Duplicity.
   Indictment for conspiracy for neglect of official duty in enforcement of criminal law is not bad for duplicity merely because it relates to more than one offense where misconduct charged is all germane to one course of wrongdoing.

4. CONSPIRACY—INDICTMENT AND INFORMATION—HOUSES OF ILL-FAME.

"To permit and allow" as used in indictment charging conspiracy of mayor, police officials and others to neglect enforcement of law as to keeping of houses of ill-fame is construed as "to assist and enable," and, so construed, criminality of conspirator's acts is clear (3 Comp. Laws 1929, § 16826).

5. SAME—HOUSES OF ILL-FAME—INDICTABLE OFFENSE AT COMMON LAW.

Conspiracy to commit the felony of keeping a house of ill-fame constitutes an indictable offense at common law which may be prosecuted in this jurisdiction (3 Comp. Laws 1929, § 17343).

6. INDICTMENT AND INFORMATION—CONSPIRACY—SUFFICIENCY—PUBLIC OFFICIALS—HOUSES OF ILL-FAME.

Indictment charging mayor, police officials and others with conspiracy in the keeping of houses of ill-fame within city *held*, sufficient to charge conspiracy and sufficiently informative to advise them of nature of accusation.

7. SAME—CONSPIRACY.

An indictment may be as general and indefinite as the conspiracy it seeks to punish.

8. CONSPIRACY.

Conspiracy requires existence of understanding or agreement to accomplish an unlawful end or a lawful end by unlawful means.

9. INDICTMENT AND INFORMATION—CONSPIRACY.

Indictment need not set forth the manner of accomplishing an unlawful act where that is charged as the purpose of a conspiracy.

10. SAME—ILLEGAL OBJECT OF CONSPIRACY.

Indictment need not charge illegal object of a conspiracy with the same degree of particularity required in charging commission of the substantive offense involved.

11. SAME—BILL OF PARTICULARS—CONSPIRACY.

Holding by trial court that status of one of defendants charged with conspiracy, who demanded bill of particulars that was never furnished and nothing done about it before trial some months later, was the same as that of other defendants who made no such request did not result in prejudicial error under the circumstances.

12. SAME—STATUTORY CHARGE—BILL OF PARTICULARS.

> Failure to file bill of particulars on seasonable request is reversible error where short statutory form of charge is used, the statute being mandatory (3 Comp. Laws 1929, § 17258).

13. SAME—COMMON-LAW FORM—BILL OF PARTICULARS.

> Ordering a bill of particulars is discretionary with the court where common-law form of indictment is used and failure to order same is reversible error only when resulting in such abuse of discretion as deprives defendant of a fair trial.

14. CRIMINAL LAW—INDICTMENT AND INFORMATION—CONSPIRACY—HOUSES OF ILL-FAME.

> Failure of court to order bill of particulars on request of mayor and police officials charged with conspiracy to neglect enforcement of laws as to keeping houses of ill-fame *held*, not prejudicial under record.

15. SAME—OPENING STATEMENT.

> Opening statement of prosecuting attorney in involved conspiracy case *held*, not prejudicial because long and slightly argumentative or because certain assertions were made upon which no testimony was later offered.

16. SAME—NEGATIVE TESTIMONY.

> Admission of testimony of negative character as to reputation of various houses of ill-fame in prosecution of mayor, police officials and others for conspiracy to permit operation of houses of ill-fame *held*, not prejudicial in view of court's instructions to jury that it must find active participation by said officials and the formation of a common design to violate the statutes as to such houses and, if referring to dereliction of duty of police officers, said testimony was material.

17. SAME—CONSPIRACY—OPENING STATEMENT AND TESTIMONY AS TO PREVIOUS MATTERS.

> Opening statement and testimony as to matters transpiring prior to period of time covered by indictment were proper where the statement related to circumstances which had a bearing upon the probability of the offense and the testimony was introductory to the conspiracy alleged.

18. TRIAL—MISTRIAL—IRREGULARITIES.

> Mistrials should not be declared in consequence of irregularities not prejudicial to rights of persons prosecuted.

19. CRIMINAL LAW—INSTRUCTIONS—CONSPIRACY—STATUTES.

Court's charge to jury in prosecution of mayor, police officials and others for conspiracy in permitting operation of houses of ill-fame properly included the reading of certain statutes to the jury relative to crimes and penalties therefor germane to the subject-matter of the prosecution (2 Comp. Laws 1929, § 9090, 3 Comp. Laws 1929, §§ 16826, 16871–16873).

20. SAME—REQUESTED INSTRUCTIONS—CIRCUMSTANTIAL EVIDENCE.

Refusal of court to give requested charge as to circumstantial evidence that such proof is no stronger than the weakest link in the chain of testimony is not reversible error where court instructed jury that circumstantial evidence was proper but not always satisfactory and that proof beyond a reasonable doubt was necessary on every material fact essential to convict on conspiracy charged.

21. SAME—CONSPIRACY—ADMISSIONS BY INDIVIDUAL CONSPIRATORS.

Charge of court in prosecution of mayor, police officials and others for conspiracy in permitting operation of houses of ill-fame, as to competency and binding effect of admissions or statements of individual conspirators upon others *held*, without error.

22. CONSPIRACY—PASSIVE COGNIZANCE—ACTIVE PARTICIPATION.

Failure to give requested instruction on trial of mayor, police officials and others for conspiracy in permitting operation of houses of ill-fame that passive cognizance of commission of crime is not sufficient to sustain charge is without merit where such was not claimed by prosecution nor intimated by the charge of the court which did require finding of active participation of conspirators in order to convict.

23. CRIMINAL LAW—DISMISSAL OF COUNT OF INDICTMENT.

Dismissal of one count of indictment during trial does not bar further prosecution on the modified indictment provided it still charges offense known to the law.

Appeal from Wayne; Ferguson (Homer), J. Submitted January 30, 1934. (Docket No. 123, Calendar No. 36,507.) Decided March 6, 1934. Rehearing denied June 4, 1934.

Rudolph G. Tenerowicz, Joseph Rupinski, Harry Wurmuskerken and Jacob Kaplan were convicted of

conspiracy to permit the keeping and operating of houses of ill-fame in the City of Hamtramck. Affirmed.

*Robert T. Speed* (*George A. Kelly,* of counsel), for appellant Tenerowicz.

*Chawke & Sloan,* for appellant Rupinski.

*Echlin & Lendzion,* for appellant Wurmuskerken.

*Andrew C. Baird,* for appellant Kaplan.

*Patrick H. O'Brien,* Attorney General, *Harry S. Toy,* Prosecuting Attorney, and *Harry F. Kelly, Thomas A. Kennedy, Lloyd A. Loomis* and *Edmund E. Shepherd,* Assistants Prosecuting Attorney, for the people.

North, J. Defendants by indictment were charged with conspiring among themselves and with others to permit the keeping and operating of certain houses of ill-fame in the city of Hamtramck, Wayne county; Michigan. Motions to quash were denied. On trial by jury defendants were convicted and they have appealed.

This is the first question presented by appellants: Is the indictment defective in not charging any offense known to the law; and is it sufficiently informative as to the nature of the accusation? The indictment contains two counts, but by reason of dismissal of the second count we are presently concerned only with the sufficiency of the first count. We quote it in part:

"That (the defendants) heretofore, to-wit: on the 15th day of April, 1928, and on divers other days and times between that time and the 15th of June, 1931, * * * together with divers other persons to

this grand jury unknown, he, the said Rudolph Tenerowicz, then being a public officer and an executive officer of the said city of Hamtramck, to-wit: the mayor, and they, the said Joseph Rupinski and Harry Wurmuskerken, then being public and executive officers of the city of Hamtramck, to-wit: policemen and public officials and being then and there, to-wit: captain of police and chief of police, respectively, * * * all of whom were then duly elected, appointed, and qualified, and acting in their respective official capacities during such period of time, and they, the said Jacob Kaplan (and others named), being then and there in said city engaged in the keeping, maintaining and operating of certain houses of ill-fame, did unlawfully and wickedly agree, combine, conspire, confederate and engage to, with and among themselves, and to and with each other, and to and with divers other persons to this grand jury unknown, wilfully and corruptly to permit and allow the keeping, maintaining and operating of houses of ill-fame, bawdy houses and houses and places resorted to for the purpose of prostitution and lewdness, at various places in the city of Hamtramck, in violation of the laws of the State of Michigan * * * by the said Jacob Kaplan (and certain other persons named); they, the said Rudolph Tenerowicz, Joseph Rupinski, Harry Wurmuskerken, * * * public officials of said city of Hamtramck as aforesaid, then and there well knowing that said houses of ill-fame should not be kept, maintained and operated in said city of Hamtramck, and that the keeping, maintaining and operating of such houses in said city was a violation of the laws of the State of Michigan.''

Appellants first assert that the indictment does not charge any offense known to the law. They stress the point that the indictment does not charge a conspiracy to operate or maintain a house of

prostitution; but instead a conspiracy "to permit and to allow" the operation and maintenance of such places.

A conspiracy with or among public officials not to perform their official duty relative to enforcing criminal laws or certain criminal laws is an obstruction of justice. *People* v. *MacPhee,* 26 Cal. App. 218 (146 Pac. 522). A conspiracy to obstruct justice was and is an indictable offense at common law. If the conspiracy is an agreement or understanding that violations of a certain criminal law will not be prosecuted, it is not necessary to set forth in the indictment all the elements of the offense relative to which the conspiracy is alleged as would be required in a prosecution of the crime itself. Instead it is sufficient to designate the contemplated crime by its common-law generic name or in the words of the statute if it is a statutory offense. *Alderman* v. *People,* 4 Mich. 414 (69 Am. Dec. 321); 5 R. C. L. p. 1083. Further, an indictment alleging conspiracy as to such neglect of duty will not be rendered bad for duplicity merely because such conspiracy relates to more than one offense. If the misconduct charged is all germane to one course of wrongdoing there is only one conspiracy. It may be charged and punished as a single conspiracy. *Hobbs* v. *State,* 133 Ind. 404 (32 N. E. 1019, 18 L. R. A. 774). We think it might well be held that the words "to permit and allow" houses of ill-fame to be maintained and operated, as used in this indictment, should be construed as meaning and charging that defendants conspired *to assist and enable* the other parties named in the indictment in maintaining and operating such houses of ill-fame. So construed the criminality of the acts contemplated by the conspirators is clear. It is an unlawful undertaking by defendants in consequence of

which one or more of the conspirators, assisted by the others, is enabled to and does maintain a bawdy house. Keeping such a place is a felony. (3 Comp. Laws 1929, § 16826. See, also, Act No. 328, Pub. Acts 1931, § 452.) Conspiracy to commit a felony constitutes an indictable offense at common law and may be prosecuted as such in this jurisdiction.

"Every person who shall commit an indictable offense at the common law, for the punishment of which no provision is expressly made by any statute of this State, shall be punished by imprisonment in any State prison," etc. 3 Comp. Laws 1929, § 17343.

There are many authorities holding that it is enough, in order to constitute a common-law conspiracy, if the acts contemplated are corrupt, dishonest, fraudulent or immoral, and in that sense illegal or dangerous to the public interest. *People* v. *Curran,* 286 Ill. 302 (121 N. E. 637); *Ætna Insurance Co.* v. *Commonwealth,* 106 Ky. 864 (51 S. W. 624, 45 L. R. A. 355); *Fimara* v. *Garner,* 86 Conn. 434 (85 Atl. 670); *Commonwealth* v. *Waterman,* 122 Mass. 43.

"It is a double injury, to the individual and to the people, to combine for the promotion of any form of sexual debauchery." 2 Bishop on Criminal Law (9th Ed.), § 235.

As bearing upon what constitutes an "unlawful" act incident to an alleged conspiracy, it is said in *Chicago, W. & V. Coal Co.* v. *People,* 214 Ill. 421 (73 N. E. 770):

"The term 'unlawful' as here used, does not include every act which violates the rights of a private individual and for which the law affords a civil remedy, but is held to include those acts which, by reason of the combination, have a harmful effect

upon society and the public; and a combination may amount to a conspiracy although its unaccomplished object be to do that which, if actually done by an individual, would not amount to an indictable offense, and in that sense a conspiracy may consist of a combination to do what is merely unlawful.''

In the light of foregoing authorities it must be held that the indictment does properly charge these defendants with conspiracy.

Nor do we find merit in appellants' complaint that this indictment is not sufficiently informative to advise the defendants of the nature of the accusation.

''In criminal proceedings the accused is entitled to demand and know the nature and cause of the accusation against him. Beyond that, technical elaboration of pleadings fails to subserve the ends of justice, and becomes but ingenious pitfalls for one side or the other. In charging the offense, a detailed recital of the evidence by which it will be established is not required.'' *People* v. *Quider*, 172 Mich. 280.

Concerning conspirators and conspiracies it has been said:

''It is also objected that the indictment is so vague and uncertain as not to put the defendants on notice of some of the charges against them, because the conspiracy alleged included agreements to transport liquor from places which were not identified to places which were unknown, and to sell it at Savannah or at such unknown places. Conceivably the defendants could have entered into just that kind of conspiracy. They might not themselves have agreed upon the particular places to which the liquor would be transported, or at which it would be sold. If they could enter into a conspiracy to commit offenses without agreeing upon all of the details as to how or where some features of their conspiracy

would be carried out, surely the indictment would not be rendered bad if it charged a conspiracy which also left out such details. If it were otherwise, it would not be difficult to form a criminal conspiracy which the law could not punish. The law is not as helpless as that. An indictment may be as general and indefinite as the conspiracy which it seeks to punish." *Bailey* v. *United States* (C. C. A.), 5 Fed. (2d) 437.

To constitute a conspiracy, there must exist an understanding or agreement to accomplish an unlawful end, or a lawful end by unlawful means. *People* v. *Di Laura,* 259 Mich. 260. If, however, as in the instant case, the conspiracy charged is the doing of an unlawful act, the indictment need not set forth the manner or means of accomplishing such act. *People* v. *Clark,* 10 Mich. 310; *People* v. *Petheram,* 64 Mich. 252. It is not necessary to charge the illegal object of a conspiracy with the same degree of particularity required in charging the commission of the substantive offense. *Alderman* v. *People, supra.*

"But in a charge of conspiracy the conspiracy is the gist of the crime, and certainty, to a common intent, sufficient to identify the offense which the defendants conspired to commit, is all that is requisite in stating the object of the conspiracy." *Williamson* v. *United States,* 207 U. S. 425 (28 Sup. Ct. 163).

"It is well settled that in an indictment for conspiring to commit an offense—in which the conspiracy is the gist of the crime—it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy (*Williamson* v. *United States,* 207 U. S. 425 [28 Sup. Ct. 163]), or to state such object with the detail which would be required in an indictment for committing the substantive offense." *Wong Tai* v. *United States,* 273 U. S. 77 (47 Sup. Ct. 300).

Tested by the cited authorities, we think the indictment in the instant case does charge a criminal conspiracy with sufficient certainty to reasonably apprise defendants of the nature of the offense with which they were indicted.

Appellants allege as error denial of their demand for a bill of particulars. This phase of the record in the instant case is somewhat unusual. Trial began January 11, 1932. On August 4, 1931, Circuit Judge Richter upon hearing the motion of defendant Tenerowicz for a bill of particulars filed an opinion indicating that a bill of particulars should be furnished. While a formal order to that effect was not entered, the opinion as filed concludes as follows:

"A bill of particulars shall be furnished by the prosecuting attorney on or before 10 days from this date which shall furnish the defendant with the information as herein set forth."

Notwithstanding this, a bill of particulars was not furnished. Nothing further was done in the matter by defendant Tenerowicz or his counsel prior to the trial which began months later. Under the circumstances noted we think prejudicial error did not result from the holding of the trial judge which in effect was that the status of Tenerowicz in regard to a bill of particulars should be considered the same as that of the other defendants. In this connection it should be noted that the bill of particulars which Judge Richter concluded should be furnished pertained very largely to the second count of the indictment and that this count was subsequently dismissed by the trial judge. At the beginning of the trial and incident to hearing a motion to quash the indictment the trial judge, as stated in the record

by counsel for defendant Rupinski, "directed the prosecuting attorney to serve on counsel for the defendant a document which I assume was a bill of particulars." The document referred to was filed as exhibit 2 in the case. It gave each of defendants' counsel the location of each of the alleged houses of prostitution and the name of the person operating the same; and it also advised defendants' counsel that alleged payments of money to the indicted public officials was made either by defendant Jacob Kaplan direct to said officials or by Jacob Kaplan through Barney Roth and that said payments were in various amounts up to and including, to-wit: $2,000 per month during the period covered by the indictment. It was urged in objection to this exhibit 2 that it was not labeled a "bill of particulars," that the prosecuting attorney asserted in open court it was not a bill of particulars, and the trial court declined to construe it as a bill of particulars. The point of contention was that the prosecuting attorney sought to avoid being circumscribed in the presentation of testimony and being bound by the statement furnished as a bill of particulars. On the other hand defendants sought the advantage of a bill of particulars in so limiting the testimony. 3 Comp. Laws 1929, § 17258, permits and sets up short forms of indictments and informations, and concludes:

"Provided, that the prosecuting attorney, if seasonably requested by the respondent, shall furnish a bill of particulars setting up specifically the nature of the offense charged."

Where the short statutory form of charge is used, failure to file a bill of particulars on seasonable request is reversible error because the statute is

mandatory and the bill becomes a part of the record, and is read with the indictment. *People* v. *Bogdanoff*, 254 N. Y. 16 (171 N. E. 890, 69 A. L. R. 1378). The proviso is confined to the statutory forms outlined in section 17258 and therefore does not apply to common-law forms of indictment. It should be noted that the indictment in the instant case is not a statutory form. The common law governs when the common-law form of indictment is used, and ordering a bill of particulars is then discretionary with the court. Failure to order a bill of particulars constitutes reversible error only in the event of an abuse of discretion which results in the defendant being deprived of a fair trial. *People* v. *Schneider*, 345 Ill. 410 (178 N. E. 84). Because the prosecuting attorney so asserted and the trial court so ruled, exhibit 2 was not a bill of particulars nor a legal substitute therefor. The court having granted defendant Tenerowicz's motion for a bill of particulars several months before the trial and the prosecution having ignored the ruling, the court should not have stood upon the matter of lack of notice of motion but should have granted defendants' motion for a bill of particulars although made after trial began.

The important question is whether defendants were prejudiced by the court's failure to order a bill of particulars. Exhibit 2, while not a bill of particulars, has a material bearing upon the question of abuse of discretion because this exhibit gave defendants detailed information of the people's claims. While defendants assert generally in their briefs that the proof went beyond the scope of exhibit 2, they do not point out material departure therefrom nor that the court in its charge permitted conviction on matters extraneous to the indictment

and exhibit 2.  Trial was within the issues therein presented.  On January 4th the case was set for trial January 11th; and later adjourned to February 1st.  It does not appear that defendant Tenerowicz pressed for a bill of particulars in advance of the trial date or that he objected prior to January 11th to setting the case for trial before a bill of particulars was furnished.  Nor does it appear that the other defendants demanded a bill of particulars until after the case was set for trial January 11th.  These facts seem to indicate that defendants did not deem the bill of particulars indispensable to a preparation of their defense nor does the record show that they were in fact prejudiced in their case.  In so concluding we have not overlooked defendants' application for further continuance to "seasonably and properly" prepare for trial.  Defendants' counsel were served with exhibit 2 on January 11th.  Subsequent demands for a bill of particulars seemed to have been made primarily for purposes of delay rather than that there was need of more detailed information as to what constituted the people's case.  Because the record does not show prejudice, the error was not reversible although the court should have ordered the bill of particulars at the time the application was made.  See, *People* v. *McKinney,* 10 Mich. 54.

It is also asserted by appellants that the opening statement of the prosecuting attorney was prejudicial to such a degree as to constitute reversible error.  In general it is urged that the opening statement was unduly long and argumentative.  It occupied approximately four hours of the court's time and, including colloquies incident to objections of opposing counsel, it covers 70 pages of the printed record.  Obviously it was more lengthy than the ordi-

nary opening statement in criminal cases. But it does not follow that it was therefore argumentative or otherwise prejudicial. We have given it careful consideration and are fully convinced that in view of the number of defendants, the nature of the offense charged, and the further fact that the prosecution relied largely upon circumstantial evidence necessitating proof of a great variety of circumstances and transactions, the opening statement cannot be seriously criticized on the ground that it went too much into details or was of too great length. It was unusually free from repetition and if argumentative at all was not such intentionally or in a sufficient degree to be considered prejudicial. It is also urged that as to certain assertions in the opening statement the prosecution offered no testimony. This objection is not wholly without justification; but most of appellants' objections of this character are not sustained by the record. We are satisfied in the few instances where testimony was lacking the assertions in the prosecutor's opening statement were made in good faith with the reasonable expectation that the testimony would be in accord. In the instances where it failed to some degree or in the few instances where it was wholly lacking the circumstances involved were not serious in character and not prejudicial.

Many assignments of error are based upon alleged prejudicial conduct of the prosecuting attorney and the erroneous rulings of the trial judge relative to the admissibility of testimony. We have gone over the record carefully and failed to find merit in any of these alleged errors. Neither singly nor collectively are they of such a character as would sustain the contention that the appellants or any of them were thereby deprived of a fair and

orderly trial. Defendants, on this phase of the appeal, complain of so-called "negative testimony." They state the prosecutor "was permitted, over objection, to ask numerous witnesses as to whether the police officers ever asked them as to whether they knew the reputation of various houses." The witnesses responded in the negative. It is urged in behalf of appellants that "the questions asked were wholly immaterial. The answers thereto were of no probative value." In another place in the same brief it is said of this testimony: "The answers evoked to the questions complained of tended to indicate a possible dereliction of duty." If such answers did tend "to indicate a possible dereliction of duty" clearly the testimony was material. However, we think, because of its lack of probative force this type of testimony might well have been excluded; but the record by no means sustains appellants' contention that defendants' rights were prejudiced by it. Especially is this true in view of the court's charge to the jury. He said:

"I instruct you, as a matter of law, that a police officer or mayor, under our laws, cannot be indicted merely because violations of law may occur within the jurisdiction which the police officer or mayor serves as such police officer or mayor, unless he willingly and knowingly permits such violation of law to occur without attempting to suppress it; and if a police officer or mayor honestly and sincerely performs his duty in connection therewith, he is not held criminally accountable because he does not succeed in preventing the commission of crime. I instruct you that the mere fact that houses of prostitution or places of this character may have existed in Hamtramck would not, standing alone, be sufficient to warrant you in concluding that the defendants, Harry Wurmuskerken, Joseph Rupinski and

Rudolph Tenerowicz were part of an illegal agreement to permit such places to operate, *and you are not to conclude that they were part of the agreement because they may have resorted to other methods than those which you might think might be more effective towards closing such places,* if you believe that they were honest in their efforts to bring about their closing by repeated raids, or if you are satisfied that the course they pursued was in line with the advice given them by the prosecuting attorney for the county of Wayne.   *   *   *   There must be something showing active participation of some kind by the parties to be charged; that is, that they or some of them had actually formed a common design to violate the statutes of the State of Michigan relative to the operation and maintenance of houses of ill-fame, or as I have given it to you, and this must be found beyond a reasonable doubt from the evidence in the case.   That is, that this conspiracy was formed and was a common design to violate the statutes of the State of Michigan relative to the operation and maintenance of houses of ill-fame, if you find that they were, beyond a reasonable doubt.''

There is complaint that both by the opening statement and by the testimony matters were covered which transpired prior to the time covered by the indictment.   In each of such instances the statement and testimony were competent as relating to circumstances which had a bearing upon the probability and therefore tended to prove the offense for which defendants were indicted.   The testimony was introductory in character in that it disclosed facts and relationships leading up to the alleged conspiracy or to some fact or circumstance relative thereto. Both the statement and the testimony were proper. We forego detailed review of other alleged errors

incident to the conduct of the prosecuting attorney and rulings of the trial judge as to admissibility of evidence. After carefully considering each of the numerous contentions of this character in the respective briefs filed by appellants, we are of the opinion that grounds for declaring a mistrial are not disclosed. The trial was lengthy—approximately five weeks, the testimony voluminous, and throughout the contest was vigorous. There were some irregularities. But it is quite beyond human possibility to attain absolute perfection in a prosecution of this character and magnitude; and mistrials should not be declared in consequence of mere irregularities which are not prejudicial to the rights of the persons prosecuted.

There are several objections to the charge to the jury and to refusal of requested charges. The charge as given is clear, quite exhaustive and free from serious misstatements of law. Both as bearing upon lack of certainty in the indictment and in the court's charge to the jury, appellants assert it was error to charge that the alleged conspiracy related to violation of one or more of several sections of the Compiled Laws of 1929 which the court read to the jury. Briefly the sections read provide as follows: That inmates of bawdy houses and persons loitering therein are disorderly persons, guilty of committing a misdemeanor (section 9090); keeping a house of ill-fame resorted to for prostitution is a felony (section 16826); soliciting constitutes a misdemeanor (section 16871); admitting one to a building for purposes of prostitution is a misdemeanor (section 16872); and to aid or assist in soliciting or admitting one to a building for the purpose of prostitution is a misdemeanor (section 16873). There was testimony tending to show that

one or more of the defendants conspired with one
or more of the other persons named in the indict-
ment to commit each of the offenses above noted.
Each of such offenses embodies misconduct com-
monly incident to conducting houses of ill-fame. We
think it would be going too far to hold in a case of
this character that there was prejudicial error com-
mitted by reading the respective statutory sections
to the jury. This is true notwithstanding some of
the statutory provisions read covered other offenses.
For example: section 16826 also embodies the of-
fense of inducing a female to enter a house of ill-
fame for the purpose of prostitution and section
16872 makes it an offense to admit a person to a
vehicle for the purpose of prostitution. As noted
before, the gist of the offense charged was the con-
spiracy. Each of the statutory provisions read em-
bodied an offense which was germane to the subject-
matter of the prosecution. The statutes were
properly included in the court's instructions to the
jury.

There is complaint incident to the trial judge's
refusal or omission to give a requested charge as to
circumstantial evidence, that such proof is no
stronger than the weakest link in the chain of testi-
mony, etc., citing *People* v. *McArron*, 121 Mich. 1,
41. Without elaborating upon the term "circum-
stantial evidence" or using in full the time-honored
figure of speech that a chain of circumstantial evi-
dence is no stronger than its weakest link, the trial
judge did instruct the jury that the people must
prove all the elements of the conspiracy as alleged:
"beyond a reasonable doubt,  *  *  *  and it makes
no difference whether the evidence failing to prove
said essential elements, or the evidence destroying
the link in the chain of proof necessary to prove

said essential element, came from a witness by the prosecution or from a witness called by the defense. * * * A conspiracy may be established by circumstantial evidence or by evidence both direct and circumstantial. Circumstantial evidence is recognized in the law as proper evidence, but it may not always be satisfactory evidence."

Further, near the conclusion of his charge, the circuit judge said to the jury:

"To warrant a verdict of guilty in this case, you and each of you must unanimously find that the State has proven beyond all reasonable doubt every essential fact essential to the conviction as therein set forth. And if the State fails to prove beyond a reasonable doubt every material fact essential to convict, it is your duty to render a verdict of not guilty. Each of you are to decide the issue presented for himself or herself;" etc.

So far as the objection under consideration is concerned, the charge as given fully served the needs of the case.

Another ground of complaint is that the trial judge failed to give a requested charge to the effect that the statements or the admissions of one conspirator are not competent evidence or binding upon the other defendants "if you find that they were not part of the alleged illegal agreement." On this ground defendants have not the slightest cause for complaint. The charge as given embodied the following:

"Before you can find that any defendant is bound by any act or declaration of any other defendant, it is necessary that you find that the defendant to be bound by said act or declaration was 'a party to such conspiracy with the defendant doing said act

or making said declaration in furtherance of the object of said conspiracy. * * * While the acts and declarations of co-conspirators before the abandonment of conspiracy, are competent, yet the admissions of one joint defendant are not admissible against the others after the offense is completed."

Again appellants complain without merit, of failure to give a request reading in part as follows:

"I instruct you, members of the jury, that mere passive cognizance of the commission of a crime or unlawful act to be committed, or mere negative acquiescence, is not sufficient to sustain a charge of a conspiracy."

In considering the force of this objection, it must be born in mind that no one in behalf of the prosecution made the claim that "mere active cognizance" or "mere negative acquiescence" would constitute conspiracy, and no intimation of that kind can be found in the court's charge to the jury. Instead the jury was instructed:

"And it is necessary to show something more than proof of mere passive cognizance of fraudulent or of the illegal action of others to sustain the conspiracy; and active participation in the formation of the unlawful agreement is all that is necessary together with criminal intent. There must be something showing active participation of some kind by the parties to be charged;" etc.

Another alleged error pertains to the following incident of the trial. The circuit judge, on his own initiative, took from the consideration of the jury the second count contained in the indictment. Appellants assert that dismissal of the second count resulted in acquittal of each of them of the charge contained in the first count. They cite *Hall* v. *Peo-*

*ple,* 43 Mich. 417. If, as appellants assume, the circuit judge was of the opinion that the offense embodied in the second count of this indictment was the same as that charged in the first count, dismissal of the former during the trial in no way barred prosecution of the charge contained in the latter. Such dismissal simply eliminates surplusage and avoids repetition in the indictment. It may be laid down as a general rule that one or more counts may be stricken from an indictment or information during trial without barring further prosecution at that trial of the accused on the modified indictment or information provided it still charges an offense known to the law. This in no way conflicts with *Hall* v. *People, supra,* which holds, quoting syllabus:

"A prisoner having been once in jeopardy upon a count which has been withdrawn by the judge at the trial, cannot *afterward* be held upon it."

Appellants' contention that dismissal of the second count in the instant case worked an acquittal of the charge contained in the first count cannot be sustained.

Other matters presented in appellants' briefs, including reasons assigned in support of motions to direct verdict and for new trial, have been given consideration. We find no justification for disturbing the verdict or judgment rendered in the circuit court. We think appellants had a fair trial. The record amply justifies their conviction. It is affirmed.

Nelson Sharpe, C. J., and Potter, Fead, Wiest, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred.