*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEPARTMENT OF ENVIRONMENTAL
QUALITY,

      Plaintiff-Appellee,

v

GARY SANCRANT and TONYA SANCRANT,

      Defendants-Appellants.

FOR PUBLICATION
June 24, 2021
9:10 a.m.

No. 351904
Ingham Circuit Court
LC No. 18-000223-CE

Before: JANSEN, P.J., and M. J. KELLY and RONAYNE KRAUSE, JJ.

JANSEN, P.J.

In this case involving the Natural Resources and Environmental Protection Act (NREPA), MCL 324.101 *et seq*., defendants, Gary Sancrant (Gary) and Tonya Sancrant (Tonya), appeal as of right a judgment for plaintiff, the Department of Environmental Quality,[1] entered following a bench trial. We affirm.

## I. BACKGROUND

Defendants, a married couple, live and work in West Branch but own property, including a hunting cabin, in Schoolcraft County in the Upper Peninsula. A road—often referred to in the record as the "easement road"—exists on defendants' property; it allows defendants and their neighbors to reach their respective cabins. It is undisputed that defendants had many problems with their neighbors and did not like the fact that the easement road passes very close to defendants' cabin.

The central issue in this case is that Gary installed a new road, and in doing so he dredged from a wetland and placed fill in a wetland, contrary to Part 303 of the NREPA—specifically,

---

[1] Plaintiff's name is now the Department of Environment, Great Lakes, and Energy. However, the final order being appealed contains plaintiff's prior name.

MCL 324.30304. Plaintiff theorized that he installed the road solely because of the neighbor issues,[2] although Gary claimed that he also needed the new road because the easement road was being repeatedly flooded by beavers. Gary pleaded guilty to a misdemeanor for violating the statute, but the plea agreement did not require restoration of the wetland. Plaintiff commenced this action and obtained an order of restoration and a fine. Defendants contend on appeal that, in light of Gary's criminal matter, the restoration order was barred by principles of double jeopardy, collateral estoppel, and res judicata. They also contend that the trial court erred by finding Tonya liable after the bench trial because she was not involved in building the road and did not "permit" Gary to build it in accordance with the language of MCL 324.30304(a) and (b).

## II. DOUBLE JEOPARDY

First, defendants argue that plaintiff's lawsuit and the wetland-restoration order violated Gary's double-jeopardy protections. We review this constitutional issue de novo. *People v Miller*, 498 Mich 13, 16-17; 869 NW2d 204 (2015).

MCL 324.30304 states:

> Except as otherwise provided in this part or by a permit issued by the department under this part and pursuant to part 13, a person shall not do any of the following:
>
> (a) Deposit or permit the placing of fill material in a wetland.
>
> (b) Dredge, remove, or permit the removal of soil or minerals from a wetland.
>
> (c) Construct, operate, or maintain any use or development in a wetland.
>
> (d) Drain surface water from a wetland.[3]

MCL 324.30316 states, in part:

> (1) The attorney general may commence a civil action for appropriate relief, including injunctive relief upon request of the department under section 30315(1). An action under this subsection may be brought in the circuit court for the county of Ingham or for a county in which the defendant is located, resides, or is doing business. The court has jurisdiction to restrain the violation and to require compliance with this part. In addition to any other relief granted under this section, the court may impose a civil fine of not more than $10,000.00 per day of violation.

---

[2] Gary admitted that he wanted the neighbors to use the new road.

[3] A minor amendment of this statute enacted by way of 2018 PA 631, effective March 29, 2019, did not materially impact the language pertinent to the present appeal.

A person who violates an order of the court is subject to a civil fine not to exceed $10,000.00 for each day of violation.

(2) A person who violates this part is guilty of a misdemeanor punishable by a fine of not more than $2,500.00.

* * *

(4) In addition to the civil fines and penalties provided under subsections (1), (2), and (3), the court may order a person who violates this part to restore as nearly as possible the wetland that was affected by the violation to its original condition immediately before the violation. The restoration may include the removal of fill material deposited in the wetland or the replacement of soil, sand, or minerals.[4]

Gary pleaded guilty to a misdemeanor violation of MCL 324.30304 on the basis of the building of the road in the wetland. The Schoolcraft County Prosecutor stated that he was only seeking a suspended sentence and fine and was not seeking restoration. The prosecutor said that the building of the road

shouldn't have been done [the] way it was, but I understand why it was done. . . . If the [Department of Environmental Quality] who I've spoken with, wishes to get restoration . . . , they have options through the Attorney General's office, through the Court of Civil Claims, and stuff in Lansing, and or [sic] the option of filing here. But that's up to them. But from my perspective, I don't think that's the appropriate direction to proceed on this case. . . .

The district court imposed a three-month suspended sentence[5] and ordered Gary to pay $1,000, as well as a "state fee" of $125 and a probation oversight fee.

Defendants contend that, in light of these criminal proceedings, a double-jeopardy violation occurred. The United States Constitution and Michigan Constitution protect a person from being twice placed in jeopardy for the same offense. US Const, Am V; Const 1963, art 1, § 15. Interpretations of the federal double-jeopardy clause apply also to the state double-jeopardy clause. See *Miller*, 498 Mich at 17 n 9. "The prohibition against double jeopardy provides three related protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects

---

[4] The amendment of this statute enacted by way of 2018 PA 631 did not materially impact the language pertinent to the present appeal.

[5] The district court stated that, "at the end of 90 days, the [p]rosecutor will file a dismissal if there's [sic] no further violations."

-3-

against multiple punishments for the same offense." *People v Nutt*, 469 Mich 565, 574, 594; 677 NW2d 1 (2004).

Defendants contend that the restoration order violated the protection against multiple punishments for the same offense.[6] Double-jeopardy protections only apply to multiple *criminal* punishments. *Hudson v United States*, 522 US 93, 99; 118 S Ct 488; 139 L Ed 2d 450 (1997). This Court has stated that "the constitutional provision against double jeopardy is not violated when a civil penalty serves a purpose distinct from any punitive purpose." *People v Artman*, 218 Mich App 236, 246; 553 NW2d 673 (1996). One consideration is whether the Legislature has designated a particular penalty as civil or criminal. See, generally, *Dawson v Secretary of State*, 274 Mich App 723, 733; 739 NW2d 339 (2007). Defendants contend that MCL 324.30316 facially designates a restoration order as a criminal punishment. This is not the case, however. The statute provides for both civil actions, in subsection (1), and criminal actions, in subsection (2), and then, in subsection (4), it indicates that "the court"—i.e., the civil or criminal court—can issue an order of restoration. MCL 324.30316.

Accordingly, an order to restore can be issued in either a criminal or a civil proceeding, and here, it was issued in a civil proceeding. In addition, an order to restore a wetland has been historically viewed as an equitable remedy. See *Dep't of Environmental Quality v Gomez*, 318 Mich App 1, 32; 896 NW2d 39 (2016). *Black's Law Dictionary* (11th ed) defines "equitable," in part, as "[e]xisting in equity; available or sustainable by an action in equity, or under the rules and principles of equity." It defines "equity," in part, as "[t]he body of principles constituting what is fair and right; natural law[.]" *Black's Law Dictionary* (11th ed). It seems clear that the purpose of an order to restore issued in a civil proceeding is not *punitive* in nature but is related to ecological concerns and restoring the environment to what is "fair and right."

In *Hudson*, 522 US at 99-100, the United States Supreme Court set forth the following factors to analyze in determining whether a remedy in a civil case should be considered a punishment for double-jeopardy purposes:

> (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned. [Citation, quotation marks, and brackets omitted.]

As for factor (1), the restoration order did not involve a "disability" or "restraint" approaching *something like imprisonment*. See *id.* at 104. It involved an affirmative action, but the action was merely to restore the wetland to its original state. Regarding factor (2), there is no indication that a restoration order has historically been regarded as a punishment; instead, it has been viewed, as

---

[6] Defendants are not making an argument about the fine imposed by the Ingham Circuit Court.

noted, as an equitable remedy. *Gomez*, 318 Mich App at 32. Regarding factor (3), a restoration order does not come into play only on a finding of scienter. As for factor (4), while a restoration order could promote the traditional "punishment" goal of deterrence, deterrence can promote both criminal and civil purposes. *Hudson*, 522 US at 105. In *Hudson*, *id.*, the Court stated that the sanctions at issue in that case (a banking case) served to promote the stability of the banking industry; it added, "To hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' for double jeopardy purposes would severely undermine the [g]overnment's ability to engage in effective regulation of institutions such as banks." Similarly, in the present case, disallowing the restoration order would undermine plaintiff's goal of protecting wetlands. Concerning factor (6), there is very clearly an alternative purpose, aside from punishment, to assign to a restoration order—i.e., the maintenance of wetlands and the maintenance of a healthy ecological environment. As for factor (7), in *Dawson*, 274 Mich App at 736, the Court, in evaluating an assessed fine for a driving offense, stated that the fine was not excessive in light of the alternative goal of raising revenue. Here, the restoration order was not excessive in light of the alternative purpose of maintaining healthy wetlands.

Factor (5) could be viewed in defendants' favor, because a violation of MCL 324.30316 is a crime. But in *Hudson*, 522 US at 105, the Court stated: "[T]he conduct for which . . . sanctions are imposed may also be criminal (and in this case formed the basis for petitioners' indictments). This fact is insufficient to render the money penalties and debarment sanctions criminally punitive, particularly in the double jeopardy context[.]" (Citations omitted.)

In sum, a review of all the factors and analogous caselaw reveals that the wetland-restoration order in the present civil proceeding did not violate the double-jeopardy protection against multiple punishments for the same offense.

Defendants also contend that plaintiff's lawsuit violated the protection against a second prosecution for the same offense after conviction. However, "[t]he prohibition against double jeopardy . . . protects against a second *prosecution* for the same offense after conviction[.]" *Nutt*, 469 Mich at 574 (emphasis added). There was no second prosecution here. Plaintiff initiated a civil lawsuit after the criminal proceedings. Defendants refer to *People v Spicer*, 216 Mich App 270; 548 NW2d 245 (1996), but that case is inapposite because it involved an analysis of whether two *criminal prosecutions* related to the same transaction, see *id.* at 273. Defendants' reference to *Bravo-Fernandez v United States*, ___ US ___; 137 S Ct 352; 196 L Ed 2d 242 (1996), is similarly misplaced because that case involved whether the defendants could be *criminally retried* for certain issues, see, generally, 137 S Ct at 356-357.

## III. COLLATERAL ESTOPPEL AND RES JUDICATA

Defendants contend that principles of collateral estoppel and res judicata indicate that Gary's criminal conviction barred the present lawsuit against Gary and the wetland-restoration order. We review these issues de novo. *Pierson Sand & Gravel, Inc v Keeler Brass Co*, 460 Mich 372, 379; 596 NW2d 153 (1999); *Barrow v Pritchard*, 235 Mich App 478, 480; 597 NW2d 853 (1999).

"Generally, for collateral estoppel to apply three elements must be satisfied: (1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and

final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *Monat v State Farm Ins Co*, 469 Mich 679, 682-684; 677 NW2d 843 (2004) (quotation marks, citation, and brackets omitted).[7] "Mutuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must have been a party, or in privy to a party, in the previous action. In other words, the estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him." *Id*. at 684-685 (quotation marks, citations, and brackets omitted).

"Crossover estoppel, which involves the preclusion of an issue in a civil proceeding after a criminal proceeding and vice versa, is permissible." *Barrow v Pritchard*, 235 Mich App 478, 481; 597 NW2d 853 (1999). However, "there has never been anything close to a ringing endorsement of the concept by any Michigan court. Instead, the Supreme Court has cautioned against its use." *People v Ali*, 328 Mich App 538, 542; 938 NW2d 783 (2019).

In *In re Application of Indiana Mich Power Co to Increase Rates*, 329 Mich App 397, 408; 942 NW2d 639 (2019), the Court stated that "[a] question has not been actually litigated until put into issue by the pleadings, submitted to the trier of fact for a determination, and thereafter determined." (Quotation marks and citation omitted.)

As noted, the Schoolcraft County Prosecutor stated that, under the terms of the plea agreement, he was only seeking a suspended sentence and fine and was not seeking restoration. The prosecutor said that the building of the road

> shouldn't have been done [the] way it was, but I understand why it was done. . . . If the [Department of Environmental Quality] who I've spoken with, wishes to get restoration . . . , they have options through the Attorney General's office, through the Court of Civil Claims, and stuff in Lansing, and or [sic] the option of filing here. But that's up to them. But from my perspective, I don't think that's the appropriate direction to proceed on this case. . . .

The issue of restoration of the wetlands was never subject to a determination by the district court because the prosecutor was not seeking restoration. Accordingly, under *In re Application of Indiana Mich Power Co*, 329 Mich App at 408, defendants' argument about collateral estoppel is not persuasive.[8]

As for res judicata, this doctrine

> is employed to prevent multiple suits litigating the same cause of action. The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first. This Court

---

[7] There are some exceptions to the mutuality requirement. *Id*. at 687-688.

[8] In addition, as discussed *infra* in connection with res judicata, the parties were not the same in the criminal and civil proceedings.

has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not. [*Adair v State*, 470 Mich 105, 121; 680 NW2d 386 (2004).]

In general, "[t]o be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert." *Id*. at 122. "The outer limit of the doctrine traditionally requires both a 'substantial identity of interests' and a 'working functional relationship' in which the interests of the nonparty are presented and protected by the party in the litigation." *Id*. (citations omitted).[9] Defendants contend that plaintiff and the Schoolcraft County Prosecutor were either the same parties or were in privity with one another.

In *Baraga Co v State Tax Comm*, 466 Mich 264, 266-267; 645 NW2d 13 (2002), two townships entered into a consent judgment regarding a tax issue. Later, the State Tax Commission (STC) determined that certain tax exemptions allowed by way of the consent judgment were not, in fact, permissible, and litigation ensued. *Id*. at 268. The Court of Appeals concluded "that defendant [i.e., the STC] was in privity with the local units of government in regard to property tax appeals before the tribunal and, as such, the doctrine of res judicata applied to bind defendant to the terms of consent judgments entered by the Tax Tribunal in matters where defendant was not a party." *Id*.

The Michigan Supreme Court, addressing the issue of res judicata, stated, "Courts have . . . generally found that no privity exists between state and federal governments, between the governments of different states, or between state and local governments." *Id*. at 270 (quotation marks and citation omitted.) The Court stated that "there may be specific circumstances under which the state may be bound by a judgment to which a subordinate political division was a party and the state was not, such as when the subordinate political subdivision is found to have been acting as a trustee for the state. Such circumstances are not present here." *Id*. at 270-271. The Court indicated that the general definition of privity applicable to private parties does not apply to state subdivisions. See *id*. The Court went on to state:

[W]e fail to see, even using the definition of privity [for private parties] applied by the Court of Appeals, how the parties could have a "substantial identity of interests" and represent the same legal right when defendant is empowered to intervene if it concludes that municipalities have failed to place taxable property on the tax rolls and defendant is specifically charged with exercising general supervision over local assessors. [*Id*. at 272.]

It also stated:

Further, we reject the Court of Appeals reasoning that this is all somewhat academic because "[t]he townships secured that interest [the interest in proper payment of taxes] when they negotiated to have the KBIC make payments in lieu

---

[9] As discussed *infra*, these definitions of privity applicable to private parties are not necessarily applicable to divisions of the state.

of the taxes that normally would have been assessed." Whether the taxes effectively got paid is important, of course, but it is not to this alone that the statute is directed. . . . [D]efendant is charged with ensuring that all taxable properties are placed on the assessment rolls. Plaintiffs and defendant cannot be representing the same legal right or have a substantial identity of interests if the townships purposefully did not place taxable properties on the assessment rolls, an action that defendant is required to ensure. [Citation omitted; brackets in original.]

We find that *Baraga* is controlling in the present case. The most significant fact is that the Schoolcraft County Prosecutor was not acting as a trustee for plaintiff. Indeed, the prosecutor, as noted, explicitly stated that plaintiff could seek restoration of the wetland in a separate proceeding. If the prosecutor had been acting as plaintiff's trustee in setting forth the plea agreement, he would not have made this statement.

Moreover, MCL 324.30315(1) states, "If, on the basis of information available to the department, the department finds that a person is in violation of this part . . . , the department *shall issue an order requiring the person to comply with the prohibitions* or conditions or the department *shall request the attorney general to bring a civil action under section 30316(1)*." (Emphasis added.) Again, MCL 324.30304 prohibits the placing of fill material in a wetland and prohibits dredging in a wetland. Plaintiff was required to take action to protect the wetland. This is further support for the finding that, under *Baraga*, plaintiff and the Schoolcraft County Prosecutor were not in privity for purposes of res judicata. The interests of plaintiff and the Schoolcraft County Prosecutor were not the same because plaintiff is specifically charged with protecting the environment and must take action if evidence of environmental damage is apparent, whereas the transcript of the plea proceeding makes clear that the prosecutor was more concerned with looking at Gary's subjective motivations in building the road.

Defendants contend that privity existed here under *People v Gates*, 434 Mich 146; 452 NW2d 627 (1990), overruled in part on other grounds by *Monat*, 469 Mich 679. In that case, involving whether a finding of "no jurisdiction" in a child-protective proceeding applied in a criminal prosecution,[10] the Court stated:

Although the named-party plaintiff in the instant case is the People of the State of Michigan, in practical terms the party against whom collateral estoppel is asserted is the Jackson County Prosecutor, who also represented the Department of Social Services in the probate court proceeding. Defendant argues that even though the Department of Social Services was the nominal party in the earlier proceeding, both the department and the prosecutor's office are creatures of the state and thus should be considered to be the same party. We agree. A functional analysis of the role of the prosecutor in both proceedings is appropriate in this case, and leads us

---

[10] The Court ruled that the defendant's guilt or innocence was not determined in the child-protective proceeding and that collateral estoppel did not apply. *Id*. at 165.

to conclude that privity is sufficient to satisfy the "same party" requirement. [*Id.* at 156.]

We conclude that *Gates* is distinguishable because (1) *Baraga*, setting forth the test for privity between state and local governments, was issued after *Gates*; and (2) the present case is different from *Gates* in that in *Gates*, the county prosecutor was the attorney in both cases. As discussed above, in the present circumstances, the Schoolcraft County Prosecutor had different aims than plaintiff and was not involved in the present lawsuit.

Defendants cite MCL 324.1705(3) to argue that Michigan has a public policy to avoid multiple actions for a violation of environmental laws. MCL 324.1705 states:

> (1) If administrative, licensing, or other proceedings and judicial review of such proceedings are available by law, the agency or the court may permit the attorney general or any other person to intervene as a party on the filing of a pleading asserting that the proceeding or action for judicial review involves conduct that has, or is likely to have, the effect of polluting, impairing, or destroying the air, water, or other natural resources or the public trust in these resources.

> (2) In administrative, licensing, or other proceedings, and in any judicial review of such a proceeding, the alleged pollution, impairment, or destruction of the air, water, or other natural resources, or the public trust in these resources, shall be determined, and conduct shall not be authorized or approved that has or is likely to have such an effect if there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety, and welfare.

> (3) The doctrines of collateral estoppel and res judicata may be applied by the court to prevent multiplicity of suits.

It seems clear that subsection (3) is designed to prevent a multiplicity of lawsuits in light of the broad language of subsection (1). At any rate, even assuming, without deciding, that MCL 324.1705(3) applies to a violation of Part 303, all this subsection states is that collateral estoppel or res judicata "may be applied[.]" There may be some actions during which various plaintiffs have such a sharing of interests that the doctrines are, indeed, applicable. What the lower court did was analyze whether collateral estoppel or res judicata was applicable under the specific circumstances of the present case. Its finding that neither doctrine applied was not, as discussed, erroneous.

## IV. TONYA'S LIABILITY

Defendants argue that the trial court erred by finding that Tonya "permitted" Gary to build the road within the meaning of MCL 324.30304.

"Findings of fact by the trial court may not be set aside unless clearly erroneous. A finding of fact is not clearly erroneous unless there is no evidence to support it or the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Townsend v Brown Corp of Ionia, Inc*, 206 Mich App 257, 263; 521 NW2d 16 (1994) (citations

omitted). To the extent this issue involves statutory construction, review is de novo. *Guardian Environmental Servs*, *Inc v Bureau of Construction Codes & Fire Safety, Dep't of Labor & Economic Growth*, 279 Mich App 1, 5; 755 NW2d 556 (2008).

Once again, MCL 324.30304 states, in part:

> Except as otherwise provided in this part or by a permit issued by the department under this part and pursuant to part 13, a person shall not do any of the following:
>
> (a) Deposit or permit the placing of fill material in a wetland.
>
> (b) Dredge, remove, or permit the removal of soil or minerals from a wetland.

The trial court, in its findings after the bench trial, stated, "Having observed the witness testimony and assessed the credibility of both [d]efendants, the [c]ourt finds that . . . Tonya . . . permitted [Gary] to carry out acts prohibited under the NREPA. This is sufficient to subject her to liability under MCL 324.30304(a) and (b)."

Defendants contend that to "permit" something must be construed to mean assist or otherwise take an active role. However, this Court "accord[s] to every word or phrase of a statute its plain and ordinary meaning, unless a term has a special, technical meaning or is defined in the statute. In ascertaining the plain and ordinary meaning of undefined statutory terms, we may rely on dictionary definitions." *Guardian Environmental Servs*, 279 Mich App at 6-7 (citations omitted).[11] "Permit" is not defined in the statute, and there is no indication that it has a special, technical meaning. *Merriam-Webster's Collegiate Dictionary* (11th ed) defines "permit," in part, as "to consent to expressly or formally," "to give leave," or "to make possible[.]"

Defendants contend that under *People v Tenerowicz*, 266 Mich 276, 282; 253 NW 296 (1934), and *People v O'Hara*, 278 Mich 281, 301; 270 NW 298 (1936), "permit" must be interpreted as requiring affirmative action. The former case involved interpreting the words in an indictment in a criminal case involving the maintenance of "houses of ill fame." *Tenerowicz*, 266 Mich at 282. The Court was concerned with whether "the criminality of the acts contemplated by the conspirators [was] clear" in a criminal-conspiracy indictment using the word "permit." *Id*. In *O'Hara*, the Court, relying on *Tenerowicz*, was again concerned with criminal scienter. *O'Hara*, 278 Mich at 301. The trial court in the present case concluded that these criminal cases were inapposite in this civil strict-liability case. We agree that because the present case was a civil proceeding involving a strict-liability statute, the cases cited by defendants provide no basis for interpreting the word "permit" differently from its ordinary, dictionary definition. At any rate, we

---

[11] This rule of construction belies defendants' argument that because the words surrounding "permit" in the statute involve affirmative action, "permit" must also involve affirmative action. The word is to be interpreted according to its plain meaning.

note that in *O'Hara*, the Court interpreted "permit" as meaning "assist *or* "enable."  *Id*. at 301. "Enable" is quite similar to the dictionary definition, noted above, of "make possible."

Defendants contend that plaintiff presented insufficient evidence to demonstrate Tonya's liability.  A review of pertinent evidence, however, fails to show clear error in the trial court's findings.

A friend of Gary's, Kurt Zettel, testified about loaning a mini-excavator and a bulldozer to Gary because Gary was working on a road.  Zettel testified, "I told him when he told me he was going to build a road, I said, [i]t would be cheaper to bake your neighbors a pie" to try to make peace with them.  Gary had told Zettel that he built the road to get the neighbors to stop using the easement road.  Tonya testified that she was "leery" of the neighbors passing by close to the cabin on the easement road because it made her feel unsafe.

Gary stated that what led him to buy, from a timber company, the land on which the new road was situated[12] was the need to have a new road to eliminate problems with the easement road. He *and Tonya* bought this property; it was owned jointly by them, and Tonya stated that defendants had joint bank accounts.

As early as July 2010, Gary knew that he was going to be needing equipment, such as an excavator, to build the road, because he was in the planning stages of buying the property from the timber company.  Zettel testified about loaning Gary equipment in exchange for work that Gary did on Zettel's truck.  An invoice demonstrates that Gary's business did some work for Zettel, and it states, "(No charge) Exchange for use of equipment—U.P. Cabin."  Zettel's signature on the invoice is dated July 23, 2010, and Zettel stated in his testimony that instead of paying for the work performed on his truck, he was going to loan equipment to Gary "over the next year or so."  Zettel stated that Gary borrowed Zettel's mini-excavator "probably [in] 2011" and "said he was working on a road up there."  Tonya admitted writing the invoice.  Although she claimed that Gary told her to write it because he was busy and that she did not really understand it, the trial court's opinion makes clear that it did not find credible any allegations that Tonya had no knowledge of the building of the road.  "This Court affords great deference to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it."  *Lumley v Bd of Regents for Univ of Mich*, 215 Mich App 125, 135; 544 NW2d 692 (1996).

All this evidence supports a finding that Tonya gave leave to Gary for the building of the road and made possible Gary's building of the road on their jointly owned property.  Indeed, the evidence supported that defendants bought the property jointly to attempt to address problems with their neighbors.  There is no basis for a definite and firm conclusion that the trial court made a mistake in its findings.  *Townsend*, 206 Mich App at 263.

Defendants contend that the theory of Tonya's having permitted Gary to build the road in the wetland was not alleged in the complaint.  However, defendants set forth no authorities in support of their argument that the complaint was inadequate.  As stated in *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998), "[A] mere statement without authority is insufficient to

---

[12] Defendants acquired their various parcels of property over time.

bring an issue before this Court. It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." (Citation and quotation marks omitted.) At any rate, the complaint stated that "[d]efendants dredged and placed fill material in a regulated wetland on the [p]roperty without a permit or otherwise allowed by Part 303 of NREPA, in violation of MCL 324.30304." Because the complaint was addressed to both defendants, we conclude that the complaint was adequate. In other words, plaintiff was alleging that together, by way of Gary's physical work and Tonya's permitting Gary to do that work, defendants, as a couple, "dredged and placed fill material in a regulated wetland," contrary to MCL 324.30304. MCR 2.111(B)(1) states that a complaint must contain "[a] statement of the facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend." The wording and the citation to MCL 324.30304 was adequate to inform defendants of the claim against Tonya.

Affirmed.

/s/ Kathleen Jansen
/s/ Michael J. Kelly