WILSON *v.* ATWOOD.

1. EVIDENCE—JUDICIAL NOTICE—JOURNALS OF HOUSE AND SENATE.

On petition for permission to file information in the nature of *quo warranto* to determine title to office of secretary of State, Supreme Court takes judicial notice of facts disclosed in certified copies of journals of session of senate and house of representatives convened to consider election contest for that office.

2. STATES—LEGISLATURE—JOINT CONVENTION—QUORUM.

Acts of so-called ''joint convention'' of senate and house of representatives of State legislature and of committees appointed by it *held*, a nullity where journals of respective houses show that there was not a quorum present in either body when they pretended to meet in joint convention (Const. 1908, art. 5, § 14; House Rule No. 1, Michigan Manual [1933], p. 444; Joint Convention Rule No. 3, Michigan Manual [1933], p. 457).

3. SAME—DEATH OF MEMBERS—QUORUM.

Fact that several legislators met their death in a hotel fire *held*, not to alter the number required to constitute a quorum for joint convention in order to do business other than adjourn from day to day or require presence of absent members (Const. 1908, art. 5, § 14; House Rules Nos. 1, 72, Michigan Manual [1933], pp. 444, 454; Joint Convention Rule No. 5, Michigan Manual [1933], p. 457).

4. SAME—JOINT CONVENTION—QUORUM.

In this State where legislature consists of 132 members, the action of members of legislature present in alleged joint convention convened to consider election contest for office of secretary of State in declaring 40 instead of 67 a ''majority'' or ''quorum'' *held*, a nullity, since the members present were bound by house rule requiring presence of a majority in order to do business, otherwise the principle of rule by majority is completely abnegated (Const. 1908, art. 5, § 14; art. 16, § 4; House Rule No. 1, Michigan Manual [1933], p. 444; Joint Convention Rule No. 3, Michigan Manual [1933], p. 457).

5. SAME—ELECTION CONTEST—QUORUM—CONSTITUTIONAL LAW.

   Claim that legislature called in joint convention to consider an
   election contest is a judicial body not requiring a majority
   attendance of members *held*, without constitutional warrant
   (Const. 1908, art. 5, § 14; art. 16, § 4).    ..

6. CONSTITUTIONAL LAW—POWER OF GOVERNOR TO CALL JOINT CON-
   VENTION OF LEGISLATURE.

   The governor cannot call a joint convention of the houses of
   the legislature (Const. 1908, art. 16, § 4).

7. STATES—LEGISLATURE—JOINT CONVENTION—PREREQUISITES.

   In order to have a legal joint convention of the legislature there
   must have been a proper legal notice or call given to its mem-
   bers and passage of resolution for a joint convention by
   each house of the legislature (Const. 1908, art. 16, § 4).

Petition by Guy M. Wilson for an order permit-
ting him to file an information in the nature of *quo
warranto* against Orville E. Atwood to determine
the title to the office of Secretary of State. Sub-
mitted January 25, 1935. (Calendar No. 38,294.)
Petition denied February 8, 1935.

*Andrew J. Transue, Walter G. Krapohl* and *Wil-
liam A. Neithercut,* for petitioner.

*Schmalzriedt, Frye, Granse & Frye,* for Orville
E. Atwood.

*Harry S. Toy,* Attorney General, *Peter J. Mona-
ghan, Jr.,* and *Edmund E. Shepherd,* Assistants At-
torney General, for the people.

PER CURIAM. Claiming to have been duly elected
secretary of State at the previous fall election, for
the term commencing January 1, 1935, and that the
office was being illegally withheld from him by Or-
ville E. Atwood, the present incumbent, Guy M.
Wilson, of Flint, Michigan, has petitioned this court
for an order permitting him to file an information

in the nature of *quo warranto.* He alleges that after the State board of canvassers made a finding that Mr. Atwood had received the highest number of votes, he filed a petition directed to the senate and house of representatives, constituting the legislature of the State of Michigan, and asked that they meet in joint convention in accordance with article 16, § 4 of the Constitution, to conduct a proper investigation and determine after a recount that plaintiff was entitled to the office; that thereupon the governor called the legislature to convene in extraordinary session in joint convention on December 10, 1934, for the purpose of considering the election contest; that the legislature assembled on that date, and adjourned from time to time until December 27, 1934, when in joint convention it authorized and directed the chairman to appoint a committee to investigate plaintiff's charges and report the result to the joint convention; that the committee thus appointed conducted a recount of the ballots cast in 628 precincts of the State, and on December 31, 1934, reported to the joint convention that petitioner had netted a gain of 13,777 votes in the recount and had received the highest number of votes cast for the office; that on that date the senate and house, in joint convention assembled, thereupon by *viva voce* vote declared plaintiff elected secretary of State and authorized and ordered the State board of canvassers to certify his election; that a certification to that effect was signed by George A. Shroeder and Don W. Canfield, respectively the chairman and secretary of the joint convention; that petitioner thereupon duly qualified as secretary of State and filed his oath of office and bond with the proper authorities, as required by statute.

In accordance with the order of the court, copies of the petition were served upon Mr. Atwood and the attorney general of the State. The latter filed answers in which it claimed that under 3 Comp. Laws 1929, § 15271 *et seq.*, the attorney general of the State has the exclusive right and power to file an information in this court to contest the right to a State office; that in the event of the refusal of the attorney general to act on proper showing and request, petitioner's sole remedy would lie in mandamus proceedings in this court to compel such action; but that petitioner in the instant case had not requested the attorney general to act. It is further contended that it was improper and illegal for the "outgoing" legislature on the eve of the expiration of its term to pass upon the election of a State officer whose term of office was not to begin until after that of the legislature had ended; that the governor had no authority to summon the legislature to convene in joint convention; that such convention could only be authorized by concurrent resolution of the senate and house, and the Senate had at no time adopted any resolution to meet in joint convention with the house; that when a minority group of members of the senate did meet in joint convention with a minority group of the house on December 27, 1934, there was not then, nor at any time thereafter during the remaining days of the convention, a quorum present of either house or of both houses; that the action of this minority group was null and void and of absolutely no effect; that the joint convention was not properly officered; that the attempted recount was carried on in a most flagrant and fraudulent manner, and that the result announced was brought about by unlawful tampering with the ballot boxes, fraudulent marking of ballots,

and false tabulation of the returns, all for the purpose of showing plaintiff's election.

The court was furnished with the duly certified journals of the house of representatives and senate, each containing a full and complete record of the proceedings of the second extra session of 1934, including all meetings of each house prior to the "joint convention," and all proceedings of the "joint convention" up to the time of adjournment on the night of December 31, 1934. Because of the very great importance of the question, and the necessity of a prompt decision, if possible, the court ordered oral arguments on questions of law and on the facts as shown by the journals, of which the court takes judicial notice.

Without passing upon plaintiff's right to petition for the writ without relation to the attorney general, and treating the call of the governor for a joint convention as if he had called each house for the purpose of adopting proper resolutions for a meeting in joint convention, we turn to the question of the legality of the proceedings of the "joint convention" itself. The journals of the respective houses and of the so-called "joint convention" show beyond cavil that at no time on either December 27th or December 31, 1934, the only two days on which the two bodies pretended to meet in joint convention, was there present a quorum of either house, or of both houses. The acts of the so-called "joint convention" and of the committees appointed by it were therefore a nullity. The sole provision in the Constitution relating to joint conventions is found in article 16, § 4, which does not attempt to regulate the proceedings of such conventions. Article 5, § 15 of the Constitution, however, provides that each house, except as otherwise provided in the

Constitution, shall choose its own officers and determine the rules of its proceedings. In accordance with this section, joint convention Rule No. 3 (Michigan Manual, 1933, p. 457) was adopted by the senate and house, providing that the rules of the house, as far as the same may be applicable, should govern the proceedings in joint convention. Therefore, applying to the joint convention House Rule No. 1 (Michigan Manual, 1933, p. 444), which states that a majority of the members elected to the house shall constitute a quorum, it is evident that the presence of a majority of the combined membership of the legislature, if not of each house, in accordance with article 5, § 14 of the Constitution, was necessary to constitute a quorum at a joint convention, and without such quorum the convention could not transact business, except to adjourn from time to time, and take action to force the attendance of absent members.

The number of members elected to the house of representatives in 1933 was 100; to the senate, 32. The total combined membership of the two houses was therefore 132, and it was necessary that a majority of that number, or 67, be present in order to constitute a quorum for the "joint convention." A reference to the journals reveals that when the legislators first assembled in "joint convention" on the afternoon of December 27, 1934, 56 of the living members of the house were absent, and only 14 senators were present. It thus appears that the highest number of members present at the "joint convention" on December 27th was 52. After the roll of the house had been called, the clerk announced that there was no quorum. The chairman, however, ruled that the question of a quorum could be raised only by a member of the body, notwith-

standing the fact that the roll call had disclosed the absence of a quorum. A motion was then made to appoint a committee of five to conduct the investigation and recount, and a committee consisting of two senators and three representatives was appointed.

The legislators met again in so-called "joint convention" on December 31, 1934. The roll call at the opening of the session showed that only 39 members of the house were present, and nine members of the senate. Following roll call, however, another representative entered the house, and when the convention convened in the evening, after a recess, five additional representatives and six additional senators entered the house, so that the highest number of members present on December 31, 1934, was 60. The record shows that six representatives and one senator had met tragic death on the morning of December 11, 1934, at the catastrophic Hotel Kerns fire. However, this did not alter the number required to constitute a quorum; nor, if it did, does it appear that there was even a majority of the living members of the legislature present at either session of the "joint convention." House Rule No. 1 (Michigan Manual 1933, p. 444) contains no provision that a lesser number than a majority of the members elected shall constitute a quorum in the event of the resignation or death of any of its members. Furthermore, the rule is stated as follows in Cushing's Law & Practice of Legislative Assemblies (9th Ed.), p. 100, § 261:

"When the number of which an assembly may consist, at any given time, is fixed by Constitution, and an aliquot proportion of such assembly is required in order to constitute a quorum, the number of which such assembly may consist and not the

number of which it does in fact consist, at the time in question, is the number of the assembly, and the number necessary to constitute a quorum is to be reckoned accordingly. Thus, in the senate of the United States, to which by the Constitution each State in the Union may elect two members, and which may consequently consist of two members from each State, the quorum is a majority of that number, whether the States have all exercised their constitutional right or not."

Under House Rule No. 72 (Michigan Manual, 1933, p. 454), the rules of parliamentary practice comprised in Cushing's Law & Practice of Legislative Assemblies, *supra,* govern in all cases in which they are not inconsistent with the standing rules and orders of the house or Constitution of the State of Michigan. Under Joint Convention Rule No. 5 (Michigan Manual, 1933, p. 457), the members present had the power to compel the attendance of absent members in the mode and under the penalties prescribed by the rules of the house to which such members respectively belonged, and for that purpose the sergeant-at-arms of each house was directed to attend the meetings of the "joint convention." However, no steps were taken to compel the attendance of the absent members. Instead, when a roll call was demanded at the evening session on December 31st, the chairman of the convention ruled the request out of order. The majority report of the recount committee, which supported plaintiff's claims, and the minority report, which supported defendant Atwood's claims as to illegality and fraud in the recount, were then read, and a discussion followed. A motion was then made and carried that a "majority" should constitute the number of 40 of both members of the senate and the house of representatives. It is claimed by peti-

tioner that the word "majority" was inserted in
the journal by mistake in place of the word "quo-
rum," and that the motion in fact was that 40 should
constitute a quorum. Be that as it may, such action
by a purely minority group was entirely irregular,
illegal and without warrant of law. The members
in attendance at the "joint convention" were bound
by the house rule requiring the presence of a major-
ity to constitute a quorum to do business, and the
minority group had no power to rule that 40, less
than a majority, should constitute a quorum. If
they had such power, then it follows that a quorum
might have consisted of even a lesser number, and,
reducing the argument to its absurdity, had all but
three members of both houses been convinced of the
impropriety of the joint convention at the time and
in the manner in which it was held, and had they
absented themselves and not been forced to attend
in the manner provided by law, then the three mem-
bers present might have adopted a resolution that
three should constitute a quorum, and two of them
might have passed any resolution they saw fit. Such
conduct is a complete abnegation of the principle of
rule by the majority, which is a fundamental concept
of all democratic and representative government.

This principle was recognized by the United
States Supreme Court in *United States* v. *Ballin*,
144 U. S. 1, 7 (12 Sup. Ct. 507), in which the legality
of certain proceedings of the United States house
of representatives was involved. The court stated:

"It is true that most of the decisions touching
this question have been in respect to the actions of
trustees and directors of a private corporation, or
of the minor legislative bodies which represent and
act for cities and other municipal corporations; but
the principle is the same. The two houses of con-

gress are legislative bodies representing larger constituencies. Power is not vested in any one individual, but in the aggregate of the members who compose the body, and its action is not the action of any separate member or number of members, but the action of the body as a whole; and the question which has over and over again been raised is, What is necessary to constitute the official action of this legislative and representative body?''

The court then quoted with approval the following statement from 1 Dillon, Municipal Corporations (4th Ed.), § 283:

"And, as a general rule, it may be stated that not only where the corporate power resides in a select body, as a city council, but where it has been delegated to a committee or to agents, then, in the absence of special provisions otherwise, a minority of the select body, or of the committee or agents, are powerless to bind the majority to do any valid act. If all the members of the select body or committee, or if all the agents are assembled, or if all have been duly notified, and the minority refuse or neglect to meet with the others, a majority of those present may act, provided those present constitute a majority of the whole number. In other words, in such case, a major part of the whole is necessary to constitute a quorum, and a majority of the quorum may act. If the major part withdraw so as to leave no quorum, the power of the minority to act is, in general, considered to cease.''

Following the adoption of the motion that "a majority" should constitute the number of 40, a motion was made that the State board of canvassers certify the election of plaintiff as secretary of State, and that such certification be made before midnight that night, December 31, 1934. The journal shows that the motion carried by a vote of 26 to 13. Thus

even if the members present had the power to rule that 40 should constitute a quorum (which they did not), it does not even appear that 40 members were present at the time the vote was taken, although 60 were present earlier in the evening.

Plaintiff contends, however, that when the legislature meets in joint convention to consider an election contest, it becomes a judicial body and it no longer requires that a majority of the members attend the meetings. Thus a very few members of either or both houses could get together and pass upon an election contest. We do not subscribe to this claim. Constitution 1908, art. 16, § 4, provides that when the determination of the board of State canvassers is contested, the legislature in joint convention shall decide which person is elected. It does not provide that less than a majority of the legislature may assemble and determine which person is elected. Even were there any merit to plaintiff's contention, there must have been at least a proper call or notice of a joint convention. We call attention to the fact that a governor cannot call the legislature together in joint convention, but that each house must decide upon a joint convention. The record shows that there was no resolution passed by the senate for a joint convention and there was not a proper legal notice given to its members. Without such resolution and notice, there could not be a legal joint convention. The entire proceedings were fatally defective. There was no joint convention.

The petition for writ will be denied without costs, the question being a public one.

POTTER, C. J., did not sit.