PEOPLE *v.* O'HARA.

1. CRIMINAL LAW—PROSECUTOR'S ORDER FOR WARRANT—SECURITY FOR COSTS—ONE-MAN GRAND JURY.

Statute, requiring that warrants in criminal cases may be issued by designated public officials only when a written order therefor signed by the prosecuting attorney or security for costs has been filed with such public official, *held,* inapplicable to one-man grand jury proceeding (3 Comp. Laws 1929, §§ 17135, 17217, 17218).

2. SAME—ISSUANCE OF WARRANT—IRREGULARITY—JURISDICTION.

Irregularity, if any, in issuance of warrant by judge of recorder's court who conducted one-man grand jury proceeding without the filing of either a written order allowing such warrant signed by the prosecuting attorney or of security for costs *held,* not jurisdictional (3 Comp. Laws 1929, §§ 17135, 17217, 17218).

3. ATTORNEY GENERAL—INTERVENTION IN SUITS—PROSECUTING ATTORNEY.

Statute providing for appearance and prosecution by prosecuting attorney in his respective county of all prosecutions, civil or criminal, in which the State or county may be a party or interested, must be interpreted in the light of liberally construed statute vesting attorney general with right to intervene when, in his judgment, the interests of the State so require (1 Comp. Laws 1929, §§ 176, 187, 1286).

4. SAME—ATTEMPTED ELECTION FRAUD—PROSECUTING ATTORNEY.

Attorney general held, entitled to conduct prosecution for attempted election fraud involving a State office, where court in which proceedings were pending permitted him to intervene at the outset of the examination, prosecuting attorney had filed with the court a statement that he had no evidence upon which to base an information and attorney general had conducted grand jury proceedings and court had inherent power to permit the attorney general to intervene in case of such character (1 Comp. Laws 1929, §§ 176, 187, 1286, 3299).

5. CRIMINAL LAW—ATTEMPTED ELECTION FRAUD—STATUTES—IMMUNITY FROM PROSECUTION.

Defendants on trial for attempted election fraud and conspiracy, each of whom testified in one-man grand jury proceeding, held, not entitled to immunity from prosecution (1) under statute providing for such proceeding because there was a failure to comply with protective provisions as to self-incrimination therein; (2) under statute granting immunity to parties who testify in proceedings under chapter relating to election expenses as testimony was not given in such proceeding, and (3) under statute granting immunity to witnesses at trials of persons charged with having violated some provision of the general election law as defendants in giving testimony at such grand jury proceeding were not charged with such violation (Comp. Laws 1929, §§ 3299, 3314, 3344, 17217, 17218, 17220).

6. SAME—IMMUNITY FROM PROSECUTION—CONSTITUTIONAL LAW.

One-man grand jury statute providing for judicial inquiry for purpose of discovery of crime held, not unconstitutional as not giving immunity as broad as the constitutional protection it destroys where it contains its own provisions for protection from self-incrimination (3 Comp. Laws 1929, §§ 17217, 17218, 17220).

7. ELECTIONS—PENAL SECTIONS OF GENERAL ELECTION LAW APPLI-
CABLE TO RECOUNTS.

    Section of election law making stealing, wilful mutilation,
destruction, alteration or falsification and fraudulent removal
of election records a felony *held*, applicable to recounts pro-
vided for by other portions of the election law as the purpose
of such law is to preserve the purity of elections and guard
against abuses of the elective franchise (Const. 1908, art. 3,
§ 8; 1 Comp. Laws 1929, § 3228 *et seq.*, § 3299).

8. SAME—ALTERATION OF BALLOTS—PENALTIES—JOINT CONVENTION
COMMITTEE.

    Alteration and mutilation of ballots by committee and those
working at its direction, appointed by purported joint con-
vention of legislature to investigate contested election of secre-
tary of State *held*, subject to penalties provided for such acts
in general election law since the Constitution then provided
for joint convention of legislature in case determination of
State board of canvassers was contested and the general elec-
tion law was designed to guard against the abuse of the
elective franchise; notwithstanding subsequent amendment
(Const. 1908, art. 16, § 4; 1 Comp. Laws 1929, § 3299).

9. CONSPIRACY—ELECTIONS—COMMON-LAW OFFENSES.

    Conspiracy to violate portions of the general election law as to
alteration or mutilation of ballots and election records *held*,
to constitute an indictable offense at common law (1 Comp.
Laws 1929, § 3299).

10. INDICTMENT AND INFORMATION—TEST OF SUFFICIENCY—CHAR-
ACTER OF OFFENSES.

    The sufficiency of an information which is challenged should, at
least to some extent, be determined with reference to the
nature of the offense charged.

11. SAME—SPECIFIC OFFENSE—CONSPIRACY.

    It is not indispensable that an information should charge in de-
tail how, or by what means, or in just what manner a specific
offense was committed or a conspiracy was effected.

12. ELECTIONS—INDICTMENT AND INFORMATION—CONSPIRACY—SUF-
FICIENCY.

    Information charging commission of specific offense of altering
and mutilating election ballots by committee and those work-
ing at its direction, appointed by purported joint convention
of legislature to investigate contested election of secretary of

State and conspiracy to violate general election law *held,* sufficient to charge offense within election law and at common law and to inform defendants of nature of accusation (1 Comp. Laws 1929, § 3299).

13. INDICTMENT AND INFORMATION—DETAILED RECITAL OF EVIDENCE NOT REQUIRED.

In criminal proceedings, the accused is entitled to demand and know the nature and cause of the accusation against him but a detailed recital of the evidence by which it will be established is not required.

14. SAME—CONSPIRACY.

An information for conspiracy may be as general and indefinite as the conspiracy which it seeks to punish.

15. ELECTIONS—DE FACTO INVESTIGATING COMMITTEE OF JOINT CONVENTION OF LEGISLATURE—LACK OF QUORUM.

Fact that joint convention lacked a quorum at time committee to investigate contested election of secretary of State was appointed *held,* not to entitle such committee members and those acting under its direction to immunity from prosecution for violation of election laws by alteration and mutilation of ballots and records and conspiracy to do so when they acted in a *de facto* capacity in undertaking the investigation (Const. 1908, art. 3, § 8; art. 16, § 4; 1 Comp. Laws 1929, § 3299).

16. SAME—STATUTES—EJUSDEM GENERIS.

Statute providing that "every inspector of election, clerk or other officer or person" who stole, altered or destroyed election records should be guilty of felony *held,* broad enough to include each of appellants who were acting under authority of *de facto* committee appointed to investigate contested election of secretary of State by joint convention of legislature lacking a quorum; the rule of *ejusdem generis* being inapplicable because its application would so limit scope of statute as to cause it to fall short of plain legislative intent (Const. 1908, art. 3, § 8; art. 16, § 4; 1 Comp. Laws 1929, § 3299).

17. STATUTES—CONSTRUCTION—EJUSDEM GENERIS.

The rule that general words used after specific terms are to be confined to things, purposes or persons *ejusdem generis* with those previously enumerated, is especially applicable in the interpretation of statutes defining crimes and regulating their punishment except when it is apparent that the legislature intended by the general words to go further.

18. ELECTIONS—CONSPIRACY—POSSESSION OF BALLOTS—EVIDENCE.

In prosecution for attempted election fraud and conspiracy to alter and mutilate ballots, prosecution *held,* not required to prove each of the accused persons had actual manual possession or control of the ballots but to present sufficient evidence that among persons charged there were some who, acting in concert with the others, had actual possession or control so that all would be considered as being participants in such possession or control and subject to prosecution the same as an accessory (Const. 1908, art. 3, § 8; 1 Comp. Laws 1929, § 3299).

19. SAME—KNOWLEDGE OF ILLEGAL ACTS ON PART OF OTHERS.

All persons acting together knowingly in the consummation of offense of altering and mutilating ballots and conspiracy to violate election law should be held guilty where a part of them permitted or caused others to do the unlawful acts (Const. 1908, art. 3, § 8; 1 Comp. Laws 1929, § 3299).

20. SAME—CONSTRUCTION OF STATUTES—ASSISTANCE IN UNLAWFUL UNDERTAKING.

"Who permits" as used in statute providing that "every inspector of election, clerk or other officer or person having the custody of any record, * * * certificates, poll book," or paper required by election law to be made, filed or preserved who steals, destroys, or mutilates or "who permits any other person so to do, shall on conviction, be deemed guilty of a felony" means those who enable or assist others in the unlawful undertaking (Const. 1908, art. 3, § 8; 1 Comp. Laws 1929, § 3299).

21. INDICTMENT AND INFORMATION—AMENDMENT—DUPLICITY.

Amendment of duplicitous count of information by restatement as two counts which have to do with the same transaction in an attempt to accomplish the same result by unlawful means and conspiracy to do so as was charged in count as originally drafted *held,* authorized by statute and not error (3 Comp. Laws 1929, § 17289).

22. CRIMINAL LAW—AMENDMENT OF DUPLICITOUS INFORMATION—REMAND.

Failure to remand defendants for further examination or to rearraign them after amendment of one count of information to avoid duplicity by separately charging offense under election law and conspiracy *held,* not prejudicial since amendment was one of form rather than of substance (Const. 1908, art. 3, § 8; Comp. Laws 1929, §§ 3299, 17289, 17354).

23. Indictment and Information—Bill of Particulars—Demand
—Statutes.

Denial of bill of particulars to some defendants charged with
attempted election fraud and conspiracy *held*, not error where
information itself sufficiently advised them of offense charged
against them and, since information was not in statutory or
short form, statute providing for bill of particulars is not
mandatory (Const. 1908, art. 3, § 8; Comp. Laws 1929,
§§ 3299, 17258).

24. Conspiracy—Sufficiency of Evidence as to Particular De-
fendants.

In prosecution of several defendants for attempted election fraud
and conspiracy, whether testimony is sufficient as to any par-
ticular defendant should be determined in the light of his
interest, purpose, motive and all other material facts or cir-
cumstances disclosed by the proof (Const. 1908, art. 3, § 8;
1 Comp. Laws 1929, § 3299).

25. Criminal Law—Inferences.

In criminal cases, just and logical inferences may be drawn
from facts proven.

26. Elections—Conspiracy—Evidence.

In prosecution of several defendants for attempted election
fraud and conspiracy, evidence that one defendant was a
county clerk and chairman of State central committee of a
political party, that some of his deputies took an active part
in the legislative committee's recount investigation of elec-
tion of secretary of State, that he anticipated the dispensation
of much patronage, that he treated various workers during the
investigation to meals and liquor, that there was deliberate
fraudulent alteration of ballots by some participants and that
he had knowledge thereof and other circumstances *held*, suffi-
cient to present to jury question of his guilt or innocence of
crimes charged (Const. 1908, art. 3, § 8; 1 Comp. Laws 1929,
§ 3299).

27. Conspiracy—Elections—Record—Verdict.

Record in prosecution for attempted election fraud and con-
spiracy *held*, sufficient to sustain verdict rendered as to each
defendant (Const. 1908, art. 3, § 8; 1 Comp. Laws 1929,
§ 3299).

28. CRIMINAL LAW—CONSPIRACY—SEPARATE TRIALS.

In prosecution for attempted election fraud and conspiracy, refusal to grant application of defendants for separate trials *held*, fully justified (Const. 1908, art. 3, § 8; 1 Comp. Laws 1929, § 3299).

29. SAME—INDIGENT PERSONS—APPOINTMENT OF ATTORNEY.

Upon showing of indigency upon part of one of defendants charged with attempted election fraud and conspiracy, appointment as counsel for him of an attorney who was already acting for another defendant, and whose name was also indorsed as a witness on information and compelling him to testify *held*, not reversible error, where objection was first made on appeal and matter was not called to attention of trial court, although indigent defendant, the attorney and other counsel must be assumed to have known of the attorney's connection with the case (Const. 1908, art. 3, § 8; 1 Comp. Laws 1929, § 3299).

30. SAME—ATTORNEY AS WITNESS.

Appointment, as counsel for an indigent defendant on trial for attempted election fraud and conspiracy, of an attorney whose name was indorsed on information as a people's witness, who was also attorney for another defendant and was called to testify *held*, not prejudicial where there was no violation of rule of confidential communication and no timely objection made in the trial court (Const. 1908, art. 3, § 8; 1 Comp. Laws 1929, § 3299).

31. SAME—IRREGULARITIES—FAIR AND IMPARTIAL TRIAL.

On appeal from judgment of conviction of crime the test is not whether there were some irregularities in the trial but whether defendants had a fair and impartial trial (3 Comp. Laws 1929, § 17354).

32. SAME—IRREGULARITIES IN TRIAL.

In prosecution for attempted election fraud and conspiracy, alleged improper remarks of assistants attorney general prosecuting the case, claimed prejudicial remarks, rulings and charges of the court and other irregularities *held*, not reversible error, where record raises no reasonable doubt as to justification for conviction (Const. 1908, art. 3, § 8; Comp. Laws 1929, §§ 3299, 17354).

Appeal from Recorder's Court for the City of Detroit; Skillman, (W. McKay) J. Submitted October 27, 1936. (Docket No. 132, Calender No. 38,880.) Decided December 9, 1936.

Elmer B. O'Hara, Anthony J. Wilkowski, Franklyn K. Morgan, Herbert L. Sullivan, Chester Pons, Lester Currier, Alfred J. Skiffington, Anthony J. Gallagher, James Garrett, Joseph W. Neil, James Walker, William J. Wilson, Joseph Greishaber, Vincent Murphy, John De Gutis, Charles Lark, Bruno Nowicki and T. Emmet McKenzie were convicted of an attempted election fraud. Affirmed.

*Robert E. Plunkett,* for defendant O'Hara.

*Frank G. Schemanske,* for defendant Wilkowski.

*Leo Gottfurcht,* for defendant Morgan.

*Arnold F. Zeleznik,* for defendants Sullivan, Pons and Currier.

*Echlin & Lendzion,* for defendants Skiffington, Gallagher, Garrett, Neil, Walker, Wilson and Greishaber.

*Thomas A. Kenney,* for defendant Murphy.

*John De Gutis, Charles Lark, Bruno Nowicki* and *T. Emmet McKenzie,* in *pro. per.*

*David H. Crowley,* Attorney General, *Chester P. O'Hara, Edmund E. Shepherd* and *Leslie D. Harrop,* Assistants Attorney General, for the people.

NORTH, C. J. This is an appeal in a criminal case wherein the appellants were charged, tried jointly, and convicted of what may be designated in general terms as an attempted election fraud. At the opening of the trial there were 32 defendants. As to some of them final disposition of the prosecution

was made pending the trial. Of the remaining defendants 22 were tried by the jury and 4 by the court without a jury. The jury convicted 15 and acquitted 7; the court convicted 3 and acquitted 1.

It is the people's claim that in the election recount investigation certain of the defendants altered some of the ballots which they were investigating and that certain other defendants permitted others to alter such ballots, and that all of defendants conspired to do so and conspired to change the result of the election by so doing. Many of the details surrounding the alleged offense will be found in *Behrendt* v. *Board of State Canvassers,* 269 Mich. 247; *Wilson* v. *Atwood,* 270 Mich. 317; *In re Investigation of Recount,* 270 Mich. 328; *In re Wilkowski,* 270 Mich. 687; and *Behrendt* v. *Wilcox,* 277 Mich. 232.

The following provision is a part of the general election law of this State:

"Every inspector of election, clerk or other officer or person having the custody of any record, election list of voters, affidavit, return or statement of voters, certificates, poll book, or any paper, document or vote of any description, in this act directed to be made, filed or preserved, who is guilty of stealing, wilfully destroying, mutilating, defacing, falsifying or fraudulently removing or secreting the whole or any part thereof, or who shall fraudulently make any entry, erasure, or alteration therein, or who permits any other person so to do, shall, on conviction, be deemed guilty of a felony." 1 Comp. Laws 1929, § 3299.

The information which charged the defendants with violating or conspiring to violate the provisions of the foregoing statute, as originally filed, contained five counts; but the fifth count by subsequent amendment, to avoid possible duplicity, was

divided into counts five and six. Briefly defendants are charged in the respective counts as follows:

*Count 1.* That the defendants, having possession of election ballots, fraudulently made certain alterations in the ballots by making marks and crosses upon certain ballots in addition to the crosses placed thereon by the voters.

*Count 2.* That defendants, having possession of election ballots, did permit other persons fraudulently to make such alterations.

*Count 3.* That defendants, having such possession, conspired together fraudulently to make such alterations.

*Count 4.* That defendants, having such possession, conspired to permit other persons fraudulently to make such alterations.

*Count 5 (as amended).* That defendants conspired together to conduct an investigation and recount of ballots cast for the secretary of State in the county of Wayne on November 6, 1934, and thereby and therein unlawfully to change and alter the result of the election for said office, and that in so doing said defendants did illegally alter certain of the ballots substantially in the manner charged in count one, and did place other marks upon ballots for the purpose of spoiling such ballots so that the same could not be counted.

*Count 6 (as amended).* That defendants did then and there conspire together to conduct an investigation and recount of the ballots and unlawfully to permit other persons to commit the illegal acts charged in count five.

In the November, 1934, election Orville E. Atwood and Guy M. Wilson were rival candidates for the office of secretary of State. The former on the Republican ticket, the latter on the Democratic ticket. The election of Atwood was certified by the

board of State canvassers. Certain of Wilson's supporters questioned the accuracy of the certified result. Because of the election controversy the legislature was specially convened for the purpose of holding a joint convention to determine who was elected to the office of secretary of State. For a time the issue as to who had been elected to the office of attorney general was also involved, but this was abandoned and we will not refer further to that phase of the facts.

"In case two or more persons have an equal and the highest number of votes for any office, as canvassed by the board of State canvassers, the legislature in joint convention shall choose one of said persons to fill said office. When the determination of the board of State canvassers is contested, the legislature in joint convention shall decide which person is elected." Const. 1908, art. 16, § 4.

The attempt to convene a joint convention of the legislature was abortive because of lack of a quorum. See *Wilson* v. *Atwood, supra.* Nonetheless this purported joint convention, acting through its chairman, appointed a committee of five members of the legislature to conduct an investigation of the election and to report. Defendant Wilkowski, a member of the State senate, was selected chairman of this committee, which proceeded at once to arrange for an investigation in the nature of a recount of the ballots of certain election precincts in Wayne county. Arrangements were made to carry on the activities in the Barlum Tower building in Detroit, and numerous persons were appointed or employed to assist in the details of the investigation which was in progress continuously for four days and nights. The committee demanded and received possession of ballot boxes of certain voting precincts in Wayne county from the officials in whose custody they were.

The committee appointed defendant Franklyn K. Morgan chief inspector of the investigation proceedings. As the result of the investigation which followed and in which defendants participated, defendant Wilkowski, as chairman of the committee of five, reported back to the legislature that candidate Wilson had gained 13,774 votes, which would be enough to justify declaring him elected to the office of secretary of State. A minority report was made in which the irregularities of the so-called recount investigation were set forth. Thereupon the members of the legislature present voted to declare Guy M. Wilson elected secretary of State and the board of State canvassers was directed to so certify. Decision in *Wilson* v. *Atwood, supra,* in effect nullified this action of the so-called joint convention.

Early in January of 1935 a committee of the State senate made an investigation into the investigation of the committee of the so-called joint convention. Subsequently a petition was filed with the recorder's court of Detroit by the attorney general for a one-man grand jury inquiry into the investigation of the legislative committee. Honorable Thomas M. Cotter, a judge of the recorder's court of Detroit, conducted such grand jury investigation, under and in accordance with statutory provisions. 3 Comp. Laws 1929, §§ 17217, 17218. The record shows that all of the appellants appeared and testified in the one-man grand jury proceeding. Warrants were issued against each of the defendants, examinations were conducted and defendants were held for trial. An information was filed by the attorney general. Nearly all of defendants on arraignment stood mute and pleas of not guilty were entered by the court. Prior to trial motions to quash were heard and denied. As noted above, appellants were convicted, the verdict of the jury designating under which

count or counts those tried by the jury were found guilty. Sentences were imposed and defendants have appealed.

It is claimed by appellants the warrant issued by the judge who conducted the one-man grand jury investigation was illegal because the warrant was issued without security for costs being filed and without a written order from the prosecuting attorney of Wayne county allowing the issuance of the warrant being filed, contrary to the requirements of 3 Comp. Laws 1929, § 17135.* This section is not applicable to a one-man grand jury proceeding, authorized by 3 Comp. Laws 1929, §§ 17217, 17218, but instead it is plainly intended to apply to prosecutions arising in the ordinary course of complaints and warrants. Its inapplicability to the one-man grand jury proceeding is indicated by a recent decision of this court.

"It (the one-man grand jury proceeding) is, in its nature, a proceeding for the discovery of crime and the apprehension of criminals under the control of the judge *and not under the control of either the prosecuting attorney or the attorney general,* one in which the public is interested and which is entrusted by the statute to the judge." *In re Investigation of Recount, supra.*

In any event the claimed irregularity is not jurisdictional. *People* v. *Griswold,* 64 Mich. 722.

Nor under the circumstances of this case is there merit to appellants' contention that this prosecution could not be conducted by the attorney general to the exclusion of the prosecuting attorney of Wayne county.

Appellants call attention to the following statutory provision:

_____

* This section was amended by Act No. 173, Pub. Acts 1931.— REPORTER.

"The prosecuting attorneys shall, in their respective counties, appear for the State or county, and prosecute or defend in all courts of the county, all prosecutions, suits, applications and motions, whether civil or criminal, in which the State or county may be a party, or interested." 1 Comp. Laws 1929, §1286.

This provision must be construed in the light of 1 Comp. Laws 1929, §§ 176 and 187, which vest the attorney general with the right to intervene in any civil or criminal proceeding when in his judgment the interests of the State so require. The statutory provisions, as a matter of public policy, have been liberally construed by the court. *Mundy* v. *Mc-Donald*, 216 Mich. 444 (20 A. L. R. 398); *Russell* v. *Peoples Wayne County Bank of Dearborn*, 275 Mich. 415.

Further, in the instant case, the court, in which the proceedings were pending, granted the petition of the attorney general to intervene at the outset of the examination. 1 Comp. Laws 1929, § 187. While possibly somewhat anomalous, the court's order granting intervention was nonetheless effective notwithstanding the proceeding was one instituted by the attorney general. This record also discloses that the prosecuting attorney of Wayne county filed with the court in which the proceedings were pending a statement headed and reading in part as follows:

"STATEMENT OF REASONS BY PROSECUTING ATTORNEY FOR NOT FILING INFORMATION.

\*    \*    \*

"That the investigation of what law, if any was violated by the above named defendants, respecting the charges in this case, was conducted by the at-

torney general's office of the State of Michigan through a grand jury investigation; which grand jury investigation was entirely under the control and direction of the attorney general. * * *

"That the prosecuting attorney of Wayne county has in his possession no evidence of any violations of the law, committed by the above named defendants, sufficient upon which to file an information, and that if any information is ordered filed in said cause, by the court, such order should be directed to the attorney general, and not to the prosecuting attorney."

Aside from the above, the court had the inherent power to permit the attorney general to intervene in a case of this character. The court so ordered, and appellants have no just reason for complaint. See *In re Investigation of Recount, supra.*

As before stated, all of the appellants testified in the one-man grand jury proceeding. For that reason they assert they are immune from prosecution in this case. This claim is based upon 1 Comp. Laws 1929, §§ 3314 and 3344. Section 3314 reads:

"No person otherwise competent as a witness shall be excused from answering any question, in any proceedings *under this chapter,* on the ground that such answer would tend to incriminate him; but no prosecution can afterwards be had against such witness *for any such offense* concerning which he testified for the prosecution except in an action for perjury in giving such testimony."

The above section is embodied in chapter 2, part 5 of the Michigan election law. The provisions of this chapter 2 pertain to election expenses and filing detailed accounts thereof under oath. None of these defendants have testified "in any proceedings under this chapter," nor are they being prosecuted "for

any such offense." It follows that none of defendants are entitled to immunity under 1 Comp. Laws 1929, § 3314. Likewise the immunity provided in 1 Comp. Laws 1929, § 3344, is not available to defendants. That section affords immunity only to persons who have been "called to testify in behalf of the people *in any such proceeding,*" clearly meaning thereby persons called by the people to testify in the *prosecution* of one on trial charged with having violated some provision of the general election law. None of these defendants have been called upon to so testify.

The constitutionality of our statutory provisions providing for a one-man grand jury is challenged on the ground that the "statute does not give immunity as broad as the constitutional protection it so completely destroys." We think this contention is not sound. The statute which provides for judicial inquiry for the purpose of discovery of crime contains its own provision for protection from self-incrimination. 3 Comp. Laws 1929, § 17220. See, also, *People* v. *Willson,* 205 Mich. 28. None of appellants assert immunity on the ground of there having been compliance with the provisions of section 17220. So far as this record discloses none of the defendants have had their right of immunity from self-incrimination violated.

The sufficiency of the information is challenged by appellants but we think without justification. In general the objections are that the information charges no offense known to the law, that it does not inform defendants of the nature of the accusation, or of what common-law or statutory offenses they conspired to commit, or how or by what means they conspired to commit any offense. Hereinbefore we have briefly outlined the respective counts. The

amended information covers 12 pages of the printed record. It clearly charges violation of 1 Comp. Laws 1929, § 3299, hereinbefore quoted, and also a conspiracy to violate said section. Appellants claim that the quoted section "does not pertain to recounts nor legislative investigations." This cannot be so. Section 3299 is part and parcel of the Michigan election code. The code provides for election recounts (1 Comp. Laws 1929, § 3228 *et seq.*). The Constitution provides for a joint convention of the legislature to act in such cases as that out of which these charges arise (Const. 1908, art. 16, § 4). And further the purpose of our election law appears from the mandate of the Constitution which provides:

"Laws shall be passed to preserve the purity of elections and guard against abuses of the elective franchise." Const. 1908, art. 3, § 8.

Surely section 3299 was designed to preserve the purity of the elections and to prevent the stealing, wilful mutilation, destruction, alteration or falsification and the fraudulent removal of election records. It is true that in a strict technical sense this recount investigation was not an election recount. But it was the method employed by the legislative committee by which under the constitutional provision it proposed to make a determination as to the correctness and validity of the certification of the board of State canvassers. Further, it may be noted the election code by the express terms of its title embodies provisions designed "to guard against the abuse of the elective franchise; to define violations of this act; (and) to prescribe penalties therefor." The pertinent provisions of the election code are designed to protect and pre-

serve the regularity of elections and the expressed will of electors. Nefarious conduct of the character herein charged falls within its provisions and is subject to its penalties. In so concluding we are mindful that the legislature by Act No. 234, Pub. Acts 1935, amended the election code in various particulars; but it does not follow that prior to that time misconduct of the character charged in this information could be indulged in with impunity as not being an offense within our general election law. Further a conspiracy, as herein charged, to violate the provisions of the statute constitutes an indictable offense punishable at common law. *People* v. *Tenerowicz,* 266 Mich. 276.

The sufficiency of an information which is challenged should, at least to some extent, be determined with reference to the nature of the offense charged. This information contains counts charging both a specific offense and conspiracy. It is not indispensable that an information should charge in every detail how, or by what means, or in just what manner the alleged offense was committed or the conspiracy was effected. Often such details would present an insurmountable barrier to prosecution. In the instant case the people could not allege nor prove that a particular defendant altered a particular ballot, or the defendants conspired that any particular one of them should mark or mutilate in a certain manner a certain ballot or a certain number of ballots from a certain election precinct. Nor was a charge of such detailed character required in order that the rights of the accused persons might be protected. Tested by the rules of criminal pleading, some of which we note below, the information must be held sufficient.

"In criminal proceedings the accused is entitled to demand and know the nature and cause of the

accusation against him.   Beyond that, technical elaboration of pleadings fails to subserve the ends of justice, and becomes but ingenious pitfalls for one side or the other.   In charging the offense, a detailed recital of the evidence by which it will be established is not required." *People* v. *Quider,* 172 Mich. 280, 285.

"If they could enter into a conspiracy to commit offenses without agreeing upon all of the details as to how or where some features of their conspiracy would be carried out, surely the indictment would not be rendered bad if it charged a conspiracy which also left out such details.   If it were otherwise, it would not be difficult to form a criminal conspiracy which the law could not punish.   The law is not as helpless as that.   An indictment may be as general and indefinite as the conspiracy which it seeks to punish." *Bailey* v. *United States* (C. C. A.), 5 Fed. (2d) 437.

Some of appellants contend that since it has been judicially determined there was no joint convention of the legislature because of the lack of a quorum (*Wilson* v. *Atwood, supra*), the appointment of a committee and the recount investigation were all without authority in law and hence the acts of defendants, even as charged, were not such as would be within the penal provisions of 1 Comp. Laws 1929, § 3299.   This contention is not tenable.   Defendants intended to act and claimed to act under the authority of the committee created by the legislature.   Notwithstanding the lack of legal status of the legislative joint convention, its committee and those appointed by it acted in a *de facto* capacity in undertaking the recount investigation.   It does not now lie in the mouths of defendants to say there was no such proceeding.   See *People* v. *Sanders,* 139 Mich. 442.

By some of appellants it is urged they do not come within 1 Comp. Laws 1929, § 3299, which by its terms applies to "every inspector of election, clerk or other officer or person." The contention is that under the rule of *ejusdem generis* "other officer or person" must refer to and include only those of a class similar to election inspectors, clerks, etc. The rule of *ejusdem generis* is not applicable because it cannot be so applied without unduly limiting the scope of the statute and causing it to fall short of the plain legislative intent.

"We think the rule applicable here is that stated by this court in *McDade* v. *People,* 29 Mich. 50, where Chief Justice Graves said:

" 'It is a well-settled general rule, and one especially applicable in the interpretation of statutes which define crimes and regulate their punishment, that general words are to be restrained to the matter with which the act is dealing, and that if it be dealing with specific things or particular modes only, the general words must be limited to such things or modes, *except when it is apparent that the legislature intended by the general words to go further.*' " *People* v. *Gogak,* 205 Mich. 260.

"If, upon a consideration of the context and the objects sought to be attained and of the act as a whole, it adequately appears that the general words were not used in the restricted sense suggested by the rule, we must give effect to the conclusion afforded by the wider view in order that the will of the legislature shall not fail." *Helvering* v. *Stockholms Enskilda Bank,* 293 U. S. 84 (55 Sup. Ct. 50).

The statute under which this prosecution is brought is broad enough to include each of appellants.

It is also asserted by certain of appellants that there is no testimony tending to show they had possession of the ballots or other election records or such control thereof as is charged and necessary to sustain conviction. And further that without proof

of such possession and control these appellants could not be convicted under the counts wherein it is alleged they permitted or conspired to permit others to do the unlawful acts charged. We think it is not necessary to prove that each of the accused persons had actual manual possession or control. Instead, if, as we believe, there was evidence sufficient to show that among those persons charged there were some who, acting in concert with the others, had the actual possession or control, all would be considered as being participants in such possession or control and chargeable therewith and subject to prosecution the same as accessories. In the same manner, if among those acting together knowingly in the consummation of the offense charged, a part of them permitted or caused others to do the unlawful acts, all who knowingly engaged in the unlawful undertaking should be held. "Who permits" as used in this statute means those who enable or who assist others in the unlawful undertaking. *People* v. *Tenerowicz, supra.*

There is no merit to the claim that there was error in connection with permitting the people to amend the fifth count of the information as originally drafted. By the amendment this count was restated as counts five and six. This was done to avoid duplicity. Amended counts five and six have to do with the same transaction in an attempt to accomplish the same result by unlawful means as was charged in count five as originally drafted. The statute expressly gives the court power to sever a duplicitous count into separate counts. 3 Comp. Laws 1929, § 17289. Failure to remand defendants for further examination or to re-arraign them after the amendment was in no way prejudicial. The amendment was one of form rather than substance. In this connection see 3 Comp. Laws 1929, § 17354.

Nor is there merit to the claim of error in that the demand of certain of the defendants for a bill of particulars was denied. The information itself sufficiently advised defendants of the offense charged against them. The information is not in a statutory or short form, and in such cases the statute (3 Comp. Laws 1929, § 17258) providing for a bill of particulars in criminal cases is not mandatory. *People* v. *Tenerowicz, supra.*

In behalf of defendant O'Hara it is strenuously insisted that the record is barren of testimony to support his conviction. He was found guilty on counts two, four and six of the information, charging that O'Hara permitted other persons to fraudulently alter ballots; that he conspired to permit others to fraudulently alter ballots; and that he conspired to conduct this recount investigation and to unlawfully change the election results by permitting others to alter ballots. A directed verdict of not guilty was asked and denied, and also a motion for a new trial was denied. In certain cases, of which this is a rather striking example, the probative force of some, and perhaps all, of the testimony is properly determined in the light of disclosed attendant circumstances. In cases wherein several are charged jointly it often appears that some defendants are more openly and actively engaged in the commission of the unlawful act than are other defendants. Whether the testimony is sufficient as to any particular defendant should be determined in the light of his interest or lack of interest, purpose or lack of purpose, his motive or lack of motive, and all other material facts or circumstances disclosed by the proof. In criminal as in civil cases just and logical inferences may be drawn from facts proven. The record of the instant

case discloses that defendant O'Hara was the chairman of the Democratic State central committee. He was evidently active in Wayne county politics. He was county clerk of Wayne county. His deputy, defendant Morgan, was appointed by the legislative committee to supervise the recount investigation. There is testimony that O'Hara suggested Morgan's appointment as the deputy to be in charge of the investigation. O'Hara's chief deputy clerk, defendant Herbert L. Sullivan, also took part in the recount investigation. There is also testimony that in the event of Wilson's election O'Hara as chairman of the Democratic State central committee would have much to do with dispensing political patronage; and that in this connection O'Hara said:

"Well, there is 2,800 jobs here, I am going to get over there, and be sure to get this thing and start this recount."

Because of his interest in this election matter O'Hara did go from Detroit to Lansing and was in and about Lansing prior to the appointment of the legislative committee. A witness testified that just prior to the recount investigation the following occurred in a Detroit hotel:

"(O'Hara) Pulled out a whole pocket full of bills and receipts that he had received from Senator Wilkowski, told me that Wilkowski was spending money like a drunken sailor getting this recount thing organized in Lansing."

There is testimony that O'Hara's deputy Morgan "as supervisor, hired the workers and kept tab of the tally sheets." While guards were used to exclude the general public from the place where the recount investigation was being carried on, O'Hara was there on several occasions, apparently going

and coming at will, and talking with those in charge. On Sunday morning, while the recount was in progress, O'Hara took three of the workers to his office in another building, treated them to liquor, and discussed the recount investigation. According to certain testimony, he was there told of recount irregularities, including alteration of ballots and destruction of tally sheets. One of the three workers told O'Hara "if he had another table like ours, he wouldn't need any of the rest of those fellows over there, that (we) had already picked up at our table between four and five thousand votes."

While these men were in O'Hara's office he telephoned to some third party and said:

" 'Well, I have got the three champion recounters of America,' or words to that effect, * * * 'and I am just buying them a drink.' "

As the three men were leaving, O'Hara gave one of them three dollars for lunches. The foregoing are some of the facts and circumstances disclosed by the record from which a fair inference may be drawn as to the connection of defendant O'Hara with the commission of the offense charged. The record conclusively shows that there were deliberate fraudulent alterations of ballots by persons who took part in the recount investigation. At the oral argument in this court no one had the temerity to attempt to deny such was the fact. The question is, who were the actual participants. We think it cannot be said there is not sufficient testimony in this record to present an issue for the jury's determination as to the guilt or innocence of defendant O'Hara.

Some of the other defendants, particularly Charles Lark and John De Gutis, contend that either there is no testimony at all to support the conviction as to them, or that the verdict of guilty was against the great weight of the evidence. Our review of the record satisfies us that as to each defendant there was sufficient testimony produced to sustain the verdict rendered. Also our review of the record satisfies us that the refusal of the court to grant the application of defendants for separate trials was fully justified.

Upon a showing of indigency, attorney Joseph C. Murphy was appointed as counsel for defendant Currier. At that time attorney Murphy was also the counsel of record for defendant Martin. And when the court appointed attorney Murphy as counsel for Currier the attorney's name was indorsed on the information as one of the people's witnesses. This fact was known by the attorney and it was readily ascertainable by the defendant for whom the appointment was made, and it must be assumed that it was known to other counsel in the case. One of the errors relied upon by appellants is that it was error for the court to appoint attorney Murphy, his name being indorsed on the information; and further that it was error to compel him to testify. If there were to be objection to the testimony of this attorney whose name was already indorsed upon the information, it should have been made, or at least the circumstance should have been called to the attention of the court at the time of the appointment, if any of defendants' counsel believed that the course pursued by the court would result in prejudice to their clients. It is not claimed that the examination of attorney Murphy in any way violated the rule of confidential communications be-

tween himself and his client. We think that under the circumstances the objection was not timely made and further that the course pursued in the trial of the case did not work a prejudice to any of the defendants.

Other questions are raised by defendants. The record on appeal contains 94 assignments of error. A total of 10 briefs have been filed in this cause by appellants. There has been much duplication in these briefs, doubtless in a large measure unavoidably so. Each brief has been given careful consideration and we deem it neither practical nor necessary to write in further detail. Numerous instances of alleged prejudicial remarks by the assistants attorney general are noted; it is claimed that the court made certain prejudicial remarks and erroneous rulings as to the admission as well as on the rejection of testimony; that there was error in the charge of the court and in the refusal to give certain requested charges; and further that there is fatal inconsistency in the verdict of the jury. Careful consideration has been given to these and other questions raised by the numerous counsel for appellants, but we fail to find any irregularity sufficiently prejudicial to justify reversal. Trial of the case required an unusual length of time and the volume of testimony is unusually large. Absolute perfection never has been, and probably never will be attained in legal procedure, especially in trials of hotly contested cases. In the instant case the record discloses that on each side counsel indulged in remarks which were not fully in accord with proper practice. Other irregularities might be noted; but, as before stated, we fail to find in them a justification for setting aside the verdict and judgment in the trial court. The test is not whether there were

some irregularities but instead did the defendants have a fair and impartial trial. 3 Comp. Laws 1929, § 17354. We think they did and the record is such that no reasonable doubt arises as to the justification for conviction as to each of appellants. Judgment as to each of them is affirmed.

FEAD, WIEST, BUTZEL, BUSHNELL and SHARPE, JJ., concurred. TOY and POTTER, JJ., did not sit.